UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. ROGER C. S. LIN )
No. 19 Beiping 2nd Street, Gaoxiong City, )
Taiwan, )
)
CHIEN-MING HUANG )
9th Floor, No. 15-8, Nanjing East Road, )
Sec. 5, Taipei City, Taiwan, )
)
CHOU CHANG )
2nd Floor, No. 7, Lane 55, Shenxi Road, )
Keelung City, Taiwan, )
)
CHING-YAO HOU )
2nd Floor, No. 13, Lising Road, Sec. 2, )
Taipei County, Taiwan, )
)
CHEN-HUA LIU )
10th Floor, No. 15, Min Ho Street, )
Taipei City, Taiwan, )
)
CHEN-NI WU )
2nd Floor, No. 13, Lising Road, Sec. 2, )
Taipei County, Taiwan, )
)
YANG-LUNG YANG )
No.10, Alley 1, Lane 296, Yanji Street, )
Taipei County, Taiwan, )
)
YAO-JHIH YE )
No. 34, Fongsing, Dapi Township, )
Yunlin County, Taiwan, )
)
CHING-WEN YEN )
3rd Floor, No. 21, Lane 31, Yijia Street, )
Taiping City, Taiwan, )
)
A-CHU YUCHIANG )
4th Floor, No. 61, Shihjian Street, )
Taipei City, Taiwan, and )
)

CASE NUMBER 1:06CV01825

JUDGE: Rosemary M. Collyer

DECK TYPE: General Civil

DATE STAMP: 10/24/2006

| | |
|---|---|
| TAIWAN NATION PARTY<br>9th Floor, No. 15-8, Nanjing East Road,<br>Sec. 5, Taipei, Taiwan, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | )<br>) |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs Dr. Roger C. S. Lin, Chien-Ming Huang, Chou Chang, Ching-Yao Hou, Chen-Hua Liu, Chen-Ni Wu, Yang-Lung Yang, Yao-Jhih Ye, Ching-Wen Yen, A-Chu YuChiang, and the Taiwan Nation Party on behalf of its more than 1,000 of members ("Plaintiffs") allege as follows against the United States of America ("Defendant"):

### I.

### PRELIMINARY STATEMENT

1. On September 2, 1945, the Japanese government unconditionally surrendered to the Allied Powers consisting of the United States, China, Great Britain, and the Soviet Union. That same day, General Douglas MacArthur, Supreme Commander for the Allied Powers, issued General Order No. 1 under which, according to United States Secretary of State John Foster Dulles, the "Republic of China was entrusted with authority over [Formosa[1] and the Pescadores]" as agent for the Allied Powers.[2] Such trust on behalf of the Allied Powers remains in effect today.

---

[1]   Today, Formosa is known as Taiwan.

[2]   Dep't of St. Bull., Feb. 1955, at 329; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 35, n.158 (2004); Lung-chu Chen and W. M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 611, 639 (1972).

2. Importantly, on April 28, 1952, the Treaty of Peace with Japan signed on September 8, 1951, in San Francisco, California (the "SFPT") entered into force. In Article 2(b) of the SFPT, Japan renounced "all right, title and claim to Formosa and the Pescadores."[3] Nothing in the SFPT—or in any other treaty ever executed by or between the Republic of China ("ROC") and the other Allied Powers—has altered the trusteeship granted by the Allied Powers to the ROC over Taiwan.

3. For that reason, Plaintiffs, all of whom reside in Taiwan, have filed this action to have this Court determine what fundamental rights, if any, they may have under United States laws. This determination of fundamental rights is critical to Plaintiffs because they continue to suffer as a result of the legal limbo in which they find themselves.

## II.

## PARTIES

4. Plaintiff Dr. Roger C. S. Lin is a spokesperson and member of the Taiwan Nation Party, whose address is No. 19 Beiping 2nd Street, Gaoxiong City, Taiwan.

5. Plaintiff Chien-Ming Huang is a chairman and member of the Taiwan Nation Party, whose address is 9th Floor, No. 15-8, Nanjing East Road, Sec. 5, Taipei City, Taiwan.

6. Plaintiff Chou Chang is a member of the New Nation Party, whose address is 2nd Floor, No. 7, Lane 55, Shenxi Road, Keelung City, Taiwan.

7. Plaintiff Ching-Yao Hou is a member of the Taiwan Nation Party, whose address is 2nd Floor, No. 13, Lising Road, Sec. 2, Taipei County, Taiwan.

---

[3] Treaty of Peace with Japan, art. 2(b), Sept. 8, 1951, 136 U.N.T.S. 46 (ratification advised by Senate, Mar. 20, 1952; ratified by President, Apr. 15, 1952; ratification deposited at Washington, Apr. 28, 1952; proclaimed by President Apr. 28, 1952; entered into force Apr. 28, 1952).

8.      Plaintiff Chen-Hua Liu is a member of the Taiwan Nation Party, whose address is 10th Floor, No. 15, Min Ho Street, Taipei City, Taiwan.

9.      Plaintiff Chen-Ni Wu is a member of the Taiwan Nation Party, whose address is 2nd Floor, No. 13, Lising Road, Sec. 2, Taipei County, Taiwan.

10.     Plaintiff Yang-Lung Yang is a member of the Taiwan Nation Party, whose address is No.10, Alley 1, Lane 296, Yanji Street, Taipei County, Taiwan.

11.     Plaintiff Yao-Jhih Ye is a member of the Taiwan Nation Party, whose address is No. 34, Fongsing, Dapi Township, Yunlin County, Taiwan.

12.     Plaintiff Ching-Wen Yen is a member of the New Nation Party, whose address is 3rd Floor, No. 21, Lane 31, Yijia Street, Taiping City, Taiwan.

13.     Plaintiff A-Chu YuChiang is a member of the New Nation Party, whose address is 4th Floor, No. 61, Shihjian Street, Taipei City, Taiwan.

14.     Plaintiff the Taiwan Nation Party, acting on behalf of approximately 1,000 of its other members, has its address at 9th Floor, No. 15-8, Nanjing East Road, Sec. 5, Taipei, Taiwan. The Declaratory Judgment sought in this action relates to the purposes for which the Taiwan Nation Party was founded. Participation of all of the unnamed individual members of the Taiwan Nation Party is not necessary for the prosecution of this lawsuit.

15.     Defendant United States of America is and remains the "principal occupying Power" of Taiwan under SFPT Article 23(a).[4]

---

[4] Treaty of Peace with Japan, art. 23(a), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

## III.

## JURISDICTION AND VENUE

16. This Court has jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1346(a)(2).

17. Venue is proper in this district under 28 U.S.C. Section 1391.

18. This Court is authorized to award declaratory relief under the Declaratory Judgment Act, 28 U.S.C. Sections 2201-2202.

## IV.

## HISTORICAL BACKGROUND

19. In the late XVII century, Taiwan (Formosa) was a part of the Chinese Empire.[5] The Chinese government exercised sovereignty over Taiwan and held title to its territory.

**Treaty of Shimonoseki**

20. In 1894, Japan and China engaged in the Sino-Japanese War in which Japan defeated China.

21. Following the Sino-Japanese War, the governments of China and Japan signed a peace treaty known as the Treaty of Shimonoseki on April 17, 1895. The Treaty of Shimonoseki entered into force on May 8, 1895.[6]

22. Pursuant to the Treaty of Shimonoseki, China ceded Taiwan (Formosa) to Japan. Article 2 of the Treaty of Shimonoseki provided, "China ceded to Japan in perpetuity and full

---

[5] Formosa became part of the Chinese Empire in 1683 following the fall of the Ming Dynasty and the establishment of the Qing Dynasty. *See, e.g.*, Jonathan I. Charney and J. R. V. Prescott, *Resolving Cross-Straight Relations between China and Taiwan*, 94 A.J.I.L. 453, 453-456 (2000).

[6] Treaty of Peace, Apr. 17, 1895, China-Japan, 181 Consol. TS 217 (entered into force May 8, 1895).

sovereignty . . . [t]he island of Formosa, together with all islands appertaining or belonging to the said island of Formosa."[7]  Following the Treaty of Shimonoseki, Japan exercised sovereignty over Taiwan and held title to its territory.

### Pacific War

23. On December 7, 1941, the Japanese naval and air forces attacked the United States naval base at Pearl Harbor, Hawaii.

24. On December 8, 1941, the United States Congress issued a Declaration of War against Japan. The United States President Roosevelt signed the Declaration of War against Japan the same day. The Pacific War began.

25. The Allied Powers defeated Japan, and it surrendered on September 2, 1945. The Japanese representatives signed the Instrument of Surrender aboard the battleship USS Missouri anchored with other United States and British ships in Tokyo Bay.

26. Shortly after the signing of the Instrument of Surrender, General Douglas MacArthur, Supreme Commander for the Allied Powers, issued General Order No. 1 ordering the "senior Japanese commanders and all ground, sea, air and auxiliary forces within . . . Formosa" to "surrender to Generalissimo Chiang Kai-shek."[8]  Pursuant to the General Order No. 1, Chiang Kai-shek, a military and political leader of the ROC, was a "representative of the

---

[7]  Treaty of Peace, Apr. 17, 1895, China-Japan, art. 2(b), 181 Consol. TS 217 (entered into force May 8, 1895).

[8]  Supreme Commander for the Allied Powers General Order No. 1, Sept. 2, 1945, J.C.S. 1467/2.

Allied Powers empowered to accept surrender[]" of the Japanese forces, himself or through a representative.[9]

27. On October 25, 1945, Chiang Kai-shek's representative in Taipei, Taiwan (Formosa), accepted the surrender of the Japanese forces there.

28. The surrender and repatriation of the Japanese forces in Taiwan (Formosa) was carried out with substantial assistance of the United States armed forces.

29. Following the surrender and pending a peace settlement, Taiwan (Formosa) remained *de jure* Japanese territory. General Douglas MacArthur stated at a congressional hearing in May 1951, "legalistically Formosa is still a part of the Empire of Japan."[10]

30. The Allied Powers (led by the United States), the principals, authorized Chiang Kai-shek's ROC government, the agent, to accept the surrender of the Japanese forces in Taiwan (Formosa) and to undertake the post-surrender occupation of Taiwan (Formosa) on behalf of the Allied Powers.[11] The ROC government occupied Taiwan (Formosa) on behalf of the Allied Powers (led by the United States) pending a peace treaty with Japan, which would change the legal status of Taiwan (Formosa).

---

[9] Supreme Commander for the Allied Powers General Order No. 1, Sept. 2, 1945, J.C.S. 1467/2.

[10] *See* Statement by General Douglas MacArthur, N.Y. Times, May 5, 1951, at A7; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 16, n.72 (2004).

[11] Lung-chu Chen and W. M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 611 (1972).

### San Francisco Peace Treaty ("SFPT")

31. On September 8, 1951, the Allied Powers and Japan signed the SFPT.[12] The SFPT entered into force on April 28, 1952, and it remains in force as of the filing of this Complaint.[13]

32. Pursuant to the SFPT, Japan renounced its sovereignty over Taiwan (Formosa) and title to its territory. Article 2(b) of the SFPT provided, "Japan renounces all right, title and claim to Formosa and the Pescadores."[14]

33. The SFPT did not designate the recipient of the "right, title and claim to Formosa and the Pescadores." Thus, no state received any right, title, or claim to Taiwan (Formosa) under the SFPT according to its terms.[15]

34. Japan and the Allied Powers—"Australia, Canada, Ceylon, France, Indonesia, the Kingdom of the Netherlands, New Zealand, Pakistan, the Republic of the Philippines, the United Kingdom of Great Britain and Northern Ireland, and the United States of America"—were the

---

[12] Treaty of Peace with Japan, Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[13] Treaties in Force 2006, at 495, *available at* http://www.state.gov/documents/organization/65540.pdf.

[14] Treaty of Peace with Japan, art. 2(b), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[15] *See* Lung-chu Chen and W. M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 642 (1972).

original parties to the SFPT as set forth in Article 23(a).[16] Currently, 46 countries are parties to the SFPT, but China is not one of them.[17]

35.  China never became a party to the SFPT. Neither the ROC government, which occupied the island of Taiwan (Formosa) as agent for the "principal occupying Power,"[18] nor the government of the People's Republic of China ("PRC"), which controlled mainland China, signed, ratified, or adhered to the SFPT.

36.  Article 25 of the SFPT specifically provided that the Treaty did "not confer any rights, titles or benefits on any State which [was] not an Allied Power [as defined in Article 23(a),]" subject to certain narrow exceptions set forth in Article 21.[19] Accordingly, China, a non-party, did not receive "any right, titles or benefits" under the SFPT except as specifically provided in Article 21.

37.  According to Article 21, China, a non-party, was entitled only to two benefits: one under Article 10(a),[20] which abrogated the Peking Protocol previously signed by China and

---

[16] Treaty of Peace with Japan, art. 23(a), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[17] See Treaties in Force 2006, at 495, available at http://www.state.gov/documents/organization/65540.pdf.

[18] See Treaty of Peace with Japan, art. 23(a), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952) ("the United States" is "the principal occupying Power").

[19] Treaty of Peace with Japan, art. 25, Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[20] Pursuant to Article 10(a) of the Treaty of San Francisco, "Japan renounce[d] all special rights and interests in China, including all benefits and privileges resulting from the provisions of the final Protocol signed at Peking on September 7, 1901 . . . , and agrees to the abrogation in respect to Japan of the said protocol . . . ." Treaty of Peace with Japan, art. 10(a), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

Japan; and another under Article 14(a)(2),[21] which enabled China to seize the Japanese property within China's jurisdiction at the time of the SFPT's entry into force. China did not receive any other benefits under the SFPT according to its terms.

38. Specifically, China, a non-party, was not entitled to any benefits under Article 2(b) dealing with the territory of Taiwan (Formosa).[22] The parties to the SFPT chose not to give any "right, title [or] claim to Formosa and the Pescadores" to China.

39. When the Allied Powers signed the SFPT on September 8, 1951, they did not intend to give any "right, title [or] claim to Formosa and the Pescadores" to China. Prior drafts of Article 2(b) show that the Allied Powers originally intended to give China sovereignty over Taiwan (Formosa), but later affirmatively changed their intention. The drafts dated August 5, 1947, and January 8, 1948, provided: "Japan hereby cedes to China in full sovereignty the island of Taiwan (Formosa) and adjacent minor islands[.]"[23] By contrast, the final draft of the SFPT did not transfer "full sovereignty" in Taiwan and the Pescadores Islands from Japan to China.

---

[21] Pursuant to Articles 14(a)(2) and 21 of the Treaty of San Francisco, China had "the right to seize, retain, liquidate or otherwise dispose of all property, rights and interests of (a) Japan and Japanese nationals, (b) persons acting for or on behalf of Japan or Japanese nationals, and (c) entities owned or controlled by Japan or Japanese nationals, which on the first coming into force of the present Treaty were subject to its jurisdiction." Some limitations applied. Treaty of Peace with Japan, art. 14(a)(2), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[22] Treaty of Peace with Japan, arts. 21, 25, Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[23] Memorandum from Hugh Borton to Charles E. Bohlen: Draft Treaty of Peace for Japan, State Dep't Decimal File No. 740.0011 PW (PEACE)/8-647 CS/W, State Dep't Records, Record Group 59 (Aug. 6, 1947); Memorandum, Background of Draft of Japanese Peace Treaty, State Dep't Decimal File No. 740.0011 PW (PEACE)/1-3048 CS/W, State Dep't Records, Record Group 59 (Jan. 30, 1948); see also Seokwoo Lee, *The 1951 San Francisco Peace Treaty with Japan and the Territorial Disputes in East Asia*, 11 Pac. Rim L. & Pol'y 63, 124, nn.275, 14, 15 (2002).

40. While Article 2(b) of the SFPT did not designate a recipient of "all right, title and claim to Formosa and the Pescadores," Article 23 of the SFPT designated the United States as "the principal occupying Power" with respect to the territories covered by the SFPT, including "Formosa and the Pescadores."[24]

41. Following the entry into force of the SFPT, the government of the ROC continued to occupy Taiwan (Formosa) as agent for the United States, "the principal occupying Power."

42. The Treaty of Peace between the ROC and Japan, which was signed on April 28, 1952, and entered into force on August 5, 1952 (the "Treaty of Taipei"), did not transfer sovereignty over Taiwan (Formosa) from Japan to China either.[25] Article 2 of the Treaty of Taipei merely acknowledged Article 2(b) of the SFPT, "[it] is recognized that under Article 2" of the SFPT "Japan has renounced all right, title and claim to Taiwan (Formosa) and Penghu (the Pescadores)."[26] The Treaty of Taipei did not designate China as a recipient of "all right, title and claim" to Taiwan.

43. In the aftermath of the SFPT, the governments of the leading allies interpreted the SFPT to mean that no state acquired sovereignty over Taiwan (Formosa) and title to its territory. For example, United States Secretary of State John Foster Dulles told the Senate in December 1954, "[the] technical sovereignty over Formosa and the Pescadores has never been settled. That

---

[24] Treaty of Peace with Japan, art. 23, Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952). Also, Article 4(b) of the SFPT empowered the "United States Military Government" to direct the "disposition of property of Japan and Japanese nationals" in the territories covered by the SFPT, including "Formosa and the Pescadores." Treaty of Peace with Japan, art. 4(b), Sept. 8, 1951, 136 U.N.T.S. 46 (entered into force Apr. 28, 1952).

[25] Treaty of Peace with Japan, Apr. 28, 1952, R.O.C.-Japan, 163 U.N.T.S. 38 (entered into force Aug. 5, 1952).

[26] Treaty of Peace with Japan, art. 2, Apr. 28, 1952, R.O.C.-Japan, 163 U.N.T.S. 38 (entered into force Aug. 5, 1952).

is because the Japanese peace treaty merely involves a renunciation by Japan of its right and title to these islands. But the future title is not determined by the Japanese peace treaty, nor is it determined by the peace treaty which was concluded between the [ROC] and Japan."[27] Likewise, British Foreign Secretary Anthony Eden told the British House of Commons, "under the Peace Treaty of April, 1952, Japan formally renounced all right, title and claim to Formosa and the Pescadores; but again this did not operate as a transfer to Chinese sovereignty, whether to the [PRC] or to the [ROC]. Formosa and the Pescadores are therefore, in the view of Her Majesty's Government, territory the de jure sovereignty over which is uncertain or undermined."[28] Similarly, in 1964, President Georges Pompidou (then Premier of France) stated that "Formosa (Taiwan) was detached from Japan, but it was not attached to anyone" under the SFPT.[29] Thus the leading allies were in consensus that China did not acquire sovereignty over Taiwan or title to its territory pursuant to the SFPT.

44.     The SFPT did not terminate the agency relationship between the United States, the principal, and the ROC, the agent, with regard to the occupation and administration of Taiwan (Formosa). In 1955, United States Secretary of State John Foster Dulles confirmed that the basis for ROC's presence in Taiwan was that "in 1945, the [ROC] was entrusted with authority over [Formosa and the Pescadores]" and "General Chiang [Kai-shek] was merely asked

---

[27] *See* Statement by Secretary John Foster Dulles, Dep't St. Bull., Dec. 1954, at 896; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 36, n.164 (Dec. 2004); Lung-chu Chen and W.M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 644 (1972).

[28] *See* Statement by Secretary Anthony Eden, 536 Parl. Deb., H.C., 5th ser., 1955, at 159; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 36, n.167 (2004).

[29] *See* Statement by President Georges Pompidou, N.Y. Times, Apr. 24, 1964, at 4, col. 4; *see also* Lung-chu Chen and W.M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 645 (1972).

to administer [Formosa and the Pescadores] for the Allied . . . [P]owers pending a final decision as to their ownership."[30]  In the words of British Prime Minister Winston Churchill, "Chiang Kai-shek . . . took refuge upon Formosa, where he still remains [in 1954]" after he "was driven out of [mainland China] by a Communist revolution."[31]

45. Following the entry into force of the SFPT on April 28, 1952, the ROC did not exercise sovereignty over Taiwan and did not have title to its territory.

## V.

## LEGAL STATUS OF TAIWAN: OCCUPIED TERRITORY OF THE UNITED STATES

46. From 1945 to the present, Taiwan has been an occupied territory of the United States, "the principal occupying Power." Currently, Taiwan is an occupied territory of the United States, and Taiwan's statehood status is disputed and uncertain. Neither the SFPT nor the Treaty of Taipei nor any other subsequent legal instruments changed the status of Taiwan.

47. The agency relationship between the United States, the principal, and the ROC, its agent in Taiwan, never terminated. General Douglas MacArthur's General Order No. 1 empowering the government of ROC to accept the surrender of the Japanese troops in Taiwan and to occupy Taiwan on behalf of the Allied Powers (led by the United States) following the Pacific War is still valid. Neither the Treaty of San Francisco nor the Taiwan Relations Act[32] nor

---

[30] *See* Statement by Secretary John Foster Dulles, Dep't St. Bull., Feb. 1955, at 329; *see also* N.Y. Times, Feb. 7, 1955, at A1; Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 35, nn.158, 159 (2004).

[31] *See* Statement by Prime Minister Winston Churchill, 530 Parl. Deb., H.C., 5th ser., 1954, at 494; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 35, n.162 (2004).

[32] Taiwan Relations Act, 22 U.S.C. §§ 3301-3316 (2006).

any other legal instrument terminated the agency relationship between the United States and the ROC for the purpose of the occupation and administration of Taiwan.

48.    The United States as the principal occupying Power never issued a formal statement or declaration that the occupation of Taiwan has ended.

49.    The United States as the principal occupying Power is still holding the sovereignty over Taiwan and title to its territory in trust for the benefit of the Taiwanese people. The occupying Power never transferred the sovereignty over Taiwan or title to its territory to any other government.

50.    The Taiwanese people never issued a declaration of self-determination and never formed their own government.

51.    The international community does not recognize Taiwan as a state.

52.    The United Nations never recognized Taiwan as a state and has never granted Taiwan's (ROC's) application for membership.

53.    Most importantly, the United States does not recognize Taiwan as a state. Pursuant to the Taiwan Relations Act of 1979, which embodies the United States congressional policy towards Taiwan, the United States does not maintain inter-state relations with Taiwan.[33] Instead, "the people of the United States" maintain "commercial, cultural, and other relations" with "the people of Taiwan."[34] Section 3301 of the Taiwan Relations Act reflects the United States' position that "the future of Taiwan" is still not "determined."[35]

---

[33] Taiwan Relations Act, 22 U.S.C. §§ 3301-3316 (2006).

[34] Taiwan Relations Act, 22 U.S.C. § 3301 (2006).

[35] Taiwan Relations Act, 22 U.S.C. § 3301 (2006).

54. In July 1982, the United States gave "Six Assurances" to the Taiwan authorities, including that the "United States would not alter the terms of the Taiwan Relations Act[,]" "would not alter its position about the sovereignty of Taiwan[,]" and "would not formally recognize Chinese sovereignty over Taiwan."[36]

55. On October 25, 2004, United States Secretary of State Colin Powell confirmed the United States' continuing policy towards Taiwan. He stated, "Taiwan is not independent. It does not enjoy sovereignty as a nation, and that remains our policy, our firm policy."[37]

## VI.

## RELIEF REQUESTED

Considering that the judicial branch has the authority and obligation to preserve the Constitutional rights of persons subject to the jurisdiction of the United States, whether or not such persons are United States citizens, non-citizen nationals, or aliens, Plaintiffs respectfully pray that the Court enter an Order declaring that:

(a) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, have fundamental rights under United States laws, including the United States Constitution.

(b) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, have the First Amendment right to petition the government for a redress of grievances.

---

[36] The "Six Assurances to Taiwan," *available at* http://www.taiwandocuments.org/assurances.htm.

[37] *See* Statement by Secretary Colin Powell, *available at* http://usinfo.state.gov/eap/Archive/2004/Oct/26-277540.html.

(c) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, have the Fifth Amendment right against deprivation of life, liberty, or property, without due process of law.

(d) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, have the Eighth Amendment right against cruel and unusual punishment, , including deprivation of citizenship and being "stateless."

(e) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, have the Fourteenth Amendment right against deprivation of life, liberty, or property, without due process of law.

(f) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, have the Fourteenth Amendment right of equal protection of the laws.

(g) Plaintiffs, by virtue of living in a territory subject to the jurisdiction of the United States, may not be deprived of the Fifth Amendment right to travel (including the right to apply for a passport) without due process of law, which requires notice and a hearing.

Respectfully submitted,

*Charles H. Camp*
Charles H. Camp (D.C. Bar # 416575)
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 349-3905
Facsimile: (202) 349-3906
Email: ccamp@charlescamplaw.com

**Counsel for Plaintiffs**

October 24, 2006

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Dr. Roger C.S. Lin, et al. (See attached list)

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __99999__
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

United States of America

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Washington, D.C.__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Charles H. Camp, Esquire
Law Offices of Charles H. Camp
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006
(202) 349-3905

CASE NUMBER 1:06CV01825

JUDGE: Rosemary M. Collyer

DECK TYPE: General Civil

DATE STAMP: 10/24/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⊙ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⊙ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC Sections 2201-2202. Declaratory Judgment action on behalf of certain persons residing in Taiwan seeking declaration of Constitutional rights.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 10/24/2006   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.