## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. ROGER C. S. LIN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1825 (RMC) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Charles H. Camp (D.C. Bar # 413575)
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 349-3905
Facsimile: (202) 349-3906
Email: ccamp@charlescamplaw.com

**Counsel for Plaintiffs**

February 16, 2007

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................................1

ARGUMENT...................................................................................................................................2

I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION. ..................2

    A. This Case Does Not Present a Non-Justiciable Political Question....................................2

        1. The *Baker/Goldwater* standard for determining whether a case presents a nonjusticiable political question.........................................................................................................................2
        2. Not all cases involving foreign relations present "political questions."...........................4
        3. There is no "textually demonstrable" "commitment" of the question presented by Plaintiffs to the political branches. ....................................................................................................................6
        4. There is no "lack of judicially discoverable and manageable standards" or "impossibility of deciding without an initial policy determination."....................................................................7
        5. Judicial resolution of this case would not contradict any prior policy determination by the political branches and would not interfere with their conduct of foreign relations. ...........................8

    B. Plaintiffs Have Standing to Bring this Action. .........................................................14

        1. Plaintiffs are not required to plead injury with particularity.........................................15
        2. Plaintiffs suffered an injury-in-fact. ..............................................................................16
        3. Plaintiff's injury was caused by Defendant's conduct. ..................................................18
        4. Plaintiffs' injury is redressable by this Court's declaration of Plaintiffs' nationality status................18
        5. Organization the Taiwan Nation Party has standing to bring this action on behalf of its members..19

    C. This Court Has Jurisdiction Authorized by Statutes. ................................................20

        1. This Court has Federal Question jurisdiction pursuant to 28 U.S.C. § 1331. ...............20
        2. This Court has jurisdiction over the action brought by individual Plaintiffs under the INA § 360, 8 U.S.C. § 1503. ...............................................................................................................21
        3. This Court has jurisdiction pursuant to the APA §§ 702 and 704................................22

    D. The United States Waived Sovereign Immunity From This Action..............................22

        1. Specific statutory consent by the INA § 360, 8 U.S.C. § 1503. ....................................22
        2. Specific statutory consent by the APA § 702, 5 U.S.C. § 702. .....................................23

II. PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED....................23

    A. The INA § 360, 8 U.S.C. § 1503 Specifically Authorizes a Private Cause of Action for Declaration of Nationality. ...........................................................................................24

**B.    The APA § 702, 5 U.S.C. § 702 Authorizes a Private Cause of Action to Challenge an Agency Action.**...............................................................................................................................25

**C.    Article 2(b) and Article 23(a) of the SFPT are Self-Executing and Create a Private Cause of Action.**...............................................................................................................................26

1. Article 2(b) and Article 23(a) of the SFPT are self-executing.................................................26
2. Self-executing treaties guarantee individual rights. ...............................................................28
3. Other courts treated other provision of the SFPT as self-executing and guaranteeing individual rights. ...............................................................................................................................29

**CONCLUSION**.....................................................................................................................34

## INTRODUCTION

On October 24, 2006, Plaintiffs filed a Complaint for Declaratory Relief with this Court, seeking a declaration of Plaintiffs' rights under the United States Constitution and laws. On January 12, 2007, Defendant filed a Motion to Dismiss, arguing that the Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Defendant contends that the "political . . . nature" of this action requires dismissal. (Memo. Def.'s Mot. to Dismiss at 1.) This action does not present a nonjusticiable political question, but rather requires treaty, statutory, and constitutional interpretation, which this Court has the power and duty to do.

Defendant contends that Plaintiffs lack standing, and the "advisory nature" of this action requires dismissal. (*Id.*) Plaintiffs suffered an injury-in-fact caused by Defendant's wrongful conduct that will be redressable by this Court's declaration of Plaintiffs' rights.

Defendant argues it has sovereign immunity from this action. Defendant waived sovereign immunity by specific statutory consent.

Defendant erroneously contends this Court does not have Federal Question jurisdiction to interpret federal statutes, treaties, and the Constitution. Nothing could be more wrong.

Lastly, Defendant argues Plaintiffs do not have a private cause of action under the applicable statutes and treaties. Again, we will show they do.

For the reasons set forth below, Defendant's Motion to Dismiss should be denied.

## ARGUMENT

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

This Court has subject matter jurisdiction over this action.  The case does not present a nonjusticiable political question, but rather requires interpretation of treaties, statutes, and the United States Constitution using regular means of interpretation.  Plaintiffs are not asking this Court to issue an advisory opinion.  Instead, Plaintiffs have standing to bring this action as they have suffered an injury-in-fact caused by Defendant's conduct and redressable by this Court's declaration of Plaintiffs' rights.   This Court's subject matter jurisdiction is specifically authorized by statutes.  Defendant waived sovereign immunity from this action by statutes.

### A.  This Case Does Not Present a Non-Justiciable Political Question.

This case does not present a nonjusticiable political question.  The question presented in this case is simply whether the United States Constitution and laws guarantee any rights to Plaintiffs.  The question presented in this case requires interpretation of treaties, statutes, and the Constitution using regular means of interpretation.  Adjudicating this question does not require the court to contradict any policy determination already made by the political branches or interfere with their conduct of foreign relations.

1.  The *Baker/Goldwater* standard for determining whether a case presents a nonjusticiable political question.

The political question doctrine is a narrow doctrine that restrains the courts from deciding "political questions," not "political cases."  *Baker v. Carr*, 369 U.S. 186, 217, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962) (emphasis added); *see also Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 796-798, 233 U.S. App. D.C. 384 (1984) ("Nonjusticiability based upon "political question"

is *at best a limited* doctrine . . . . It is . . . clear that the political question doctrine is a very

limited basis for nonjusticiability.")(emphasis in the original).

The modern standard for determining whether a case presents a nonjusticiable political

question is set forth in *Baker v. Carr*:

> Prominent on the surface of any case held to involve a political question is
> found
> [(1)] a textually demonstrable constitutional commitment of the issue to a
> coordinate political department; or
> [(2)] a lack of judicially discoverable and manageable standards for resolving
> it; or
> [(3)] the impossibility of deciding without an initial policy determination of a
> kind clearly for nonjudicial discretion; or
> [(4)] the impossibility of a court's undertaking independent resolution without
> expressing lack of the respect due coordinate branches of government; or
> [(5)] an unusual need for unquestioning adherence to a political decision
> already made; or
> [(6)] the potentiality of embarrassment from multifarious pronouncements by
> various departments on one question.

*Id.* at 217.

In *Goldwater v. Carter*, 444 U.S. 996, 998, 100 S. Ct. 533, 62 L. Ed. 2d 428 (1979)

involving justiciability of President's termination of the Mutual Defense Treaty with Taiwan,

Justice Powell distilled the *Baker* test into three inquiries:

> (i) Does the issue involve resolution of questions committed by the text of the
> Constitution to a coordinate branch of Government? [covering the first *Baker*
> factor]
> (ii) Would resolution of the question demand that a court move beyond areas
> of judicial expertise? [covering the second and third *Baker* factors]
> (iii) Do prudential considerations counsel against judicial intervention?
> [covering the fourth, fifth, and sixth *Baker* factors]

*Id.* at 998 (Powell, J., concurring); *see also Wang v. Masaitis*, 416 F.3d 992, 995 (9th Cir.

2005) (applying the analysis discussed by Justice Powell in *Goldwater*).  As we will

show, Defendant has failed to establish that any of the *Baker/Goldwater* factors bar

judicial resolution of the particular question presented by Plaintiffs.

2.  Not all cases involving foreign relations present "political questions."

With respect to the cases involving foreign relations, the Supreme Court cautioned in *Baker* that "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Id*. at 211 (emphasis added).  Rather then declining to exercise jurisdiction purely because a case involves foreign relations, the courts must engage in "a discriminating analysis of the particular question posed[.]" *Id*.

Applying *Baker* in a case involving foreign relations, the D.C. Circuit noted,

> While the Constitution grants to the political branches, and in particular to the Executive, responsibility for conducting the nation's foreign affairs, it does not follow that the judicial power is excluded from the resolution of cases merely because they may touch upon such affairs.  The court must instead look at "the particular question posed" in the case. *Baker v. Carr*, 369 U.S. at 211.  In fact, courts are routinely deciding cases that touch upon or even have a substantial impact on foreign and defense policy.

*Dellums v. Bush*, 752 F. Supp. 1141, 1146 (D.C. Cir. 1990) (emphasis added).

Similarly, applying *Baker* in a case touching foreign relations, the Second Circuit opined,

> Not every case "touching foreign relations" is nonjusticiable, . . . and judges should not reflexively invoke these doctrines to avoid difficult and somewhat sensitive decisions in the context of human rights . . . . Although these cases present issues that arise in a politically charged context, it does not transform them into cases involving nonjusticiable political questions.  The doctrine is one of "political questions," not one of "political cases."

*Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995) (emphasis added) (internal citations and quotations omitted).

The courts have consistently rejected the political question challenge in the cases requiring treaty, statutory, or constitutional interpretation, even though such cases involved foreign relations.  *See, e.g., Wang v. Masaitis*, 416 F.3d 992 (9th Cir. 2005) (holding that the political question doctrine did not preclude the court from considering the constitutionality of the extradition treaty with Hong Kong, a non-sovereign, under the Treaty Clause of the

Constitution); *Ungar v. Palestine Liberation Organization*, 402 F.3d 274 (1st Cir. 2005) (holding that the political question doctrine did not preclude resolution of the question whether the Palestine Liberation Organization was a sovereign state immune from suit under the Anti-Terrorist Act and the Foreign Sovereign Immunities Act); *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004) (overcoming the political question challenge and holding that foreign detainees held at the Guantanamo Bay Naval Base in Cuba could challenge the legality of their indefinite detention under the United States laws in federal courts); *In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7 (E.D.N.Y. 2005) (holding justiciable the Vietnamese plaintiffs' claims against American chemical companies for exposure to herbicides used during the Vietnam War under international conventions and domestic statutes); *Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995) (holding justiciable the plaintiff's claims against President of Bosnian-Serb Republic Karadzic for genocide, war crimes, and crimes against humanity under international conventions and domestic statutes); *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 92 L. Ed. 2d 166, 106 S. Ct. 2860 (1986) (rejecting the political question challenge and adjudicating on the merits the plaintiffs' claim against the Secretary of Commerce for failure to certify Japan as an international whaling quota violator pursuant to a statute, even though the United States and Japan concluded an international executive agreement whereby Japan promised to cease its whaling by 1988, and the Secretary of Commerce promised not to certify Japan.); *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (overcoming the political question challenge and deciding what process is due to a Guantanamo Bay detainee held as an "enemy combatant" pursuant to a statute); *Dellums v. Bush*, 752 F. Supp. 1141 (D.D.C. 1990) (rejecting the political question challenge and holding that the United States' offensive military operations in Iraq rose to the level of "war" requiring a Congressional

declaration of war pursuant to the Constitution); *United States v. Shiroma*, 123 F. Supp. 145 (D. Haw. 1954) (deciding the issue whether the United States acquired *de jure* sovereignty over Okinawa, Ryukyu Islands, under the San Francisco Peace Treaty, and whether Okinawans owed permanent allegiance to the United States); *Cheng Fu Sheng v. Rogers*, 177 F. Supp. 281 (D.D.C. 1959) (deciding the issue whether Taiwan is a "country" for the purpose of the deportation statute, and whether Taiwan is part of China), *rev'd on other grounds*, *Rogers v. Cheng Fu Sheng*, 108 U.S. App. D.C. 115, 280 F.2d 663 (D.C. Cir. 1960) (reversed on the grounds that the deportation statute contemplates a broader meaning of the word "country" than "national sovereignties" to reduce the number of "undeportables").

3. There is no "textually demonstrable" "commitment" of the question presented by Plaintiffs to the political branches.

With regard to the first *Baker* factor, there is a textually demonstrable commitment of the question presented by Plaintiffs to the judiciary as opposed to any coordinate political department. The Constitution explicitly extends judicial power to the interpretation of treaties and statutes. U.S. CONST. art. III, §2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority").

The Supreme Court reiterated that "the courts have the authority to construe treaties and executive agreements, and it goes without saying that interpreting congressional legislation is a recurring and accepted task for the federal courts." *Japan Whaling Ass'n v. American Catecean Soc'y*, 478 U.S. 221, 230, 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986). Lower courts added that the "[c]ourts remain obliged to determine whether [statutory and treaty] provisions may be interpreted as guarantees of enforceable rights." *In re Agent Orange Prod. Liab. Litig*, 373 F. Supp. 2d 7, 69 (E.D.N.Y. 2005). The courts have a constitutional duty to interpret statutes and

treaties, considering that "under the Constitution, one of the Judiciary's characteristic roles is to interpret statutes, and we cannot shirk this responsibility merely because our decision may have significant political overtones." *Id.* at 69. Lower courts adopted the view that "[t]reaties are the law of the land. Cases arising under treaties are justiciable. Louis Henkin, *Lexical Priority or 'Political Question': A Response*, 101 HARV. L. REV. 524, 531 (1987)." *Id.* at 75.

To the extent Defendant argues that the political question doctrine bars this Court from interpreting the San Francisco Peace Treaty[1] ("SFPT"), the Taiwan Relations Act[2] ("TRA"), the Immigration and Nationality Act[3] ("INA"), the Administrative Procedure Act[4] ("APA"), and the Constitution to ascertain Plaintiff's rights, Defendant's position is contrary to judicial precedents. Judicial precedents show that this Court has the constitutional power and duty to interpret the SFPT, the TRA, the INA, the APA, and the Constitution to determine whether their provisions guarantee enforceable rights to Plaintiffs.

4. There is no "lack of judicially discoverable and manageable standards" or "impossibility of deciding without an initial policy determination."

Concerning the second and third *Baker* factors, there is no "lack of judicially discoverable and manageable standards" or "impossibility of deciding without an initial policy determination." In deciding this case, this Court would use "regular means of [treaty, statutory, and] constitutional interpretation" to ascertain Plaintiffs' rights under the SFPT, the TRA, the INA, the APA, and the Constitution. *See Wang v. Masaitis*, 416 F.3d 992, 996 (9th Cir. 2005)

---

[1]    Treaty of Peace with Japan, Sept. 8, 1951, Allied Powers-Japan, 3 U.S.C. 3169 (hereinafter "SFPT").

[2]    Taiwan Relations Act, 22 U.S.C. §§ 3301-3316 (2006).

[3]    Immigration and Nationality Act, 8 U.S.C. § 1101-1778 (2006) (hereinafter "INA").

[4]    Administrative Procedure Act, 5 U.S.C. §§ 701-706 (2006) (hereinafter "APA").

("Resolution of the question may not be easy, but it only requires us to apply normal principles of interpretation to the constitutional provision at issue.") (internal citations and quotations omitted). Domestic and international law provides judicially discoverable and manageable standards for treaty, statutory and constitutional interpretation. *See Kadic* 70 F.3d at 249 ("universally recognized norms of international law provide judicially discoverable and manageable standards"); *Agent Orange*, 373 F. Supp. 2d at 70 ("While the answers to questions of international law, like those of domestic law, may not always be clear, they are ascertainable and manageable.").

This Court would not be deciding this case "without an initial policy determination" because such policy determination has already been made by the political branches. The policy determinations regarding Taiwan are reflected in the SFPT, the Mutual Defense Treaty,[5] the TRA, Executive Order No. 13014, communiqués, memoranda, and other documents.

Thus, resolution of the question presented by Plaintiffs does not require this Court to move beyond areas of judicial expertise.

5. <u>Judicial resolution of this case would not contradict any prior policy determination by the political branches and would not interfere with their conduct of foreign relations.</u>

With regard to the fourth through sixth *Baker* factors, which Justice Powell in *Goldwater* grouped as "prudential considerations," judicial resolution of this case does not require this Court to contradict any prior policy determination by the political branches regarding Taiwan or interfere with their conduct of foreign relations. *Kadic*, 70 F.3d at 249 (the "fourth through sixth *Baker* factors" are "relevant <u>only</u> if judicial resolution of a question would contradict prior decisions taken by a political branch <u>in those limited contexts</u> where such contradiction would

---

[5]     Mutual Defense Treaty, Dec. 2, 1954, U.S.-ROC, 6 U.S.T. 433 (no longer in effect).

seriously interfere with important governmental interests" (emphasis added); *see also Ungar v. Palestine Liberation Organization*, 402 F.3d 274 (1st Cir. 2005).

Contrary to Defendant's mischaracterization of the Complaint, Plaintiffs are *not* asking this Court to question the judgment of the political branches with regard to who exercises *de facto* or *de jure* sovereignty over the territory of Taiwan (although at least one court has done it).[6] (*See* Memo. Def.'s Mot. to Dismiss at 10.) Plaintiffs are *not* asking the Court to decide the status of Taiwan (although Supreme Court's precedents would provide a basis for that.) [7]

----

[6]     If Plaintiffs asked this Court to decide which country exercises *de jure* sovereignty over Taiwan—which Plaintiffs are *not* asking this Court to do—*United States v. Shiroma*, 123 F. Supp. 145 (D. Haw. 1954) would supply a persuasive authority.  In *Shiroma*, the Hawaii District decided the issue whether the United States exercised *de jure* sovereignty over Okinawa, the Ryukyu Islands, and whether Okinawans owed permanent allegiance to the United States and were United States nationals.  *Id.* at 148.  The court examined Article 3 of the SFPT dealing with the disposition of the Ryukyu Islands and a speech by John Foster Dulles, a consultant to the Secretary of State at the time.  *Id.* at 148-149.  The court held that Japan as opposed to the United States had *de jure* sovereignty over Okinawa following the SFPT, and therefore Okinawans were not United States nationals.  *Id.* at 149.  Interestingly, in reaching its conclusion, the Court specifically compared and contrasted the wording of Article 3 dealing with the disposition of the Ryukyu Islands, with the wording of Article 2 dealing with the disposition of Taiwan.

[7]     If Plaintiffs asked this Court to decide the status of Taiwan—which Plaintiffs are *not* asking this Court to do— the "Insular Cases" summarized below would provide a basis.  In the "Insular Cases," the Supreme Court interpreted the Treaty of Peace between the United States of America and the Kingdom of Spain, Dec. 10, 1898, U.S.-Spain, 30 Stat. 1754 (the "Treaty of Paris") (which concluded the Spanish War), ascertained the status of Puerto Rico and the Philippines, and defined the rights of persons living there.  The "Insular Cases" would be relevant here because they involved judicial interpretation of a peace treaty disposing of a territory following the cessation of hostilities.  In the "Insular Cases," Articles II and III of the Treaty of Paris provided for Spain ceding to the United States the island of Puerto Rico and the Philippine Islands.  Similarly, in this case, Article 2(b) of the San Francisco Peace Treaty provided for Japan renouncing all right, title, and claim to Taiwan.
In *De Lima v. Bidwell*, 182 U.S. 1, 21 S. Ct. 743, 45 L. Ed. 1041 (1901), the Supreme Court interpreted the Treaty of Paris to ascertain the status of Puerto Rico to decide whether an importer of sugar cane in Puerto Rico was required to pay an import duty).  Likewise, in *Downes v. Bidwell*, 182 U.S. 244, 21 S. Ct. 770, 45 L. Ed. 1088 (1901), the Supreme Court examined the status of Puerto Rico to determine whether an importer of oranges in Puerto Rico was required to pay an import duty.  Similarly, in *Dorr v. United States*, the Supreme Court examined the status of the Philippines to determine whether a criminal defendant in the Philippines was entitled to a jury trial under the Sixth Amendment of the Constitution.  Also, in *Balzac v. Porto Rico*, 258

Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss – Page 9

Instead, Plaintiffs are asking this Court to declare to what extent the United States Constitution and laws guarantee rights to Plaintiffs, based on pre-existing executive and legislative determinations considering Taiwan's status.    By adjudicating the question presented by Plaintiffs, this Court would stay within the bound of judicial authority delineated in *Baker*:

> [T]he judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory, once sovereignty over an area is politically determined and declared, <u>courts may examine the resulting status and decide independently whether a statute applies to that area.</u>

*Baker*, 369 U.S. at 212.

This is precisely what the Ninth Circuit did in *Wang v. Masaitis*, 416 F.3d 992 (9th Cir. 2005 ).    In *Wang*, the issue was whether the extradition treaty with Hong Kong was constitutional considering that Hong Kong was a non-sovereign.  Just as in this case, in *Wang*, the United States argued that the constitutionality of the extradition treaty was a nonjusticiable political question because it arguably required the court to decide the status of Hong Kong.  The Ninth Circuit disagreed and found that it "need not decide the status of Hong Kong's sovereignty." *Id.* at 994.  "Rather, the constitutional issue that Wang has raised is whether the term "treaty" in the Treaty Clause encompasses agreements with non-sovereigns, such as Hong-Kong -- and that question is clearly justiciable under *Baker v. Carr* . . . . " *Id.*  Having considered the history of the transfer of sovereignty over Hong Kong from the United Kingdom to China in 1997, the legal instruments implementing the transfer, and the policy declarations regarding the transfer, the Ninth Circuit concluded that "<u>China's sovereignty over Hong Kong (and by corollary Hong Kong's subsovereign status) has been resolved by the executive branch,</u>

---

U.S. 298, 42 S. Ct. 343, 66 L. Ed. 627 (1922), the Supreme Court examined the status of Puerto Rico to determine whether a criminal defendant in Puerto Rico was entitled to a jury trial pursuant to Sixth Amendment of the Constitution.

and we do not question that judgment." *Id.* at 995 (emphasis added). "However, this court may examine the resulting status of Hong Kong, and decide whether the Treaty Clause applies to Hong Kong as a constitutionally cognizable treaty party." *Id.* (emphasis added). Having overcome the political question hurdle, the Ninth Circuit upheld the extradition treaty with Hong Kong because Hong Kong's status was sufficient to satisfy the requirements of the Treaty Clause of the Constitution. *Id.* at 1000.

In light of *Wang*, this Court has the power to consider the history of the transfer of sovereignty over Taiwan from Japan in 1952, the SFPT implementing the transfer, and the legislative and executive policy statements regarding Taiwan embodied in the TRA, Executive Order No. 13014, communiqués, memoranda, and other documents. Defendant cites multiple legislative and executive policy statements regarding Taiwan, which, according to Defendant, make "clear" what Taiwan's status is. (*See* Memo. Def's Mot. to Dismiss at 10-14.) Without questioning the judgment of the legislative and executive branches regarding Taiwan's status, this Court has the power to declare to what extent the United States Constitution and laws guarantee rights to Plaintiffs. Such declaration would not be incompatible with the position taken by the political branches regarding Taiwan. This Court will give deference to the policy statements by the political branches regarding Taiwan, and therefore will not show lack of respect due to them. Such declaration would not interfere with the nation's ability to speak in one voice in the field of foreign relations, considering that Plaintiffs seek to vindicate their personal rights rather than influence America's foreign policy. *See Committee of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929 (D.C. Cir. 1988) (finding the trial court's reliance on the political question doctrine misplaced so far as the plaintiffs sought to vindicate personal right rather than influence America's foreign policy).

According to *Cheng Fu Sheng v. Rogers*, 177 F. Supp. 281 (D.D.C. 1959), the courts may examine the status of a territory and decide whether a statute applies to it <u>even if the status of the</u> <u>territory is still in limbo</u>. In *Cheng Fu Sheng*, the court decided the issue whether Taiwan is a "country" for the purpose of the deportation statute, and whether Taiwan is a part of China. *Cheng Fu Sheng*, 177 F. Supp. at 282. To decide the case without interfering with the conduct of foreign relations, the court felt it was "necessary" "to ascertain and be guided by the attitude of the Department of State on the question whether [Taiwan] is to be regarded as a part of China." *Id*. at 283. To that end, the court examined, *inter alia*, a Department of State Bulletin, which constituted an official expression of foreign policy regarding Taiwan. The Bulletin discussed the Treaty of Shimonoseki, whereby China ceded Taiwan to Japan; the Cairo Declaration; the Potsdam Declaration; the 1945 Instrument of Surrender; General MacArthur's General Order No. 1; and the SFPT, whereby Japan renounced all "right, title and claim" to Taiwan. *Id*. at 283-284, citing Dep't State Bulletin, Vol. XXXIX, No. 1017, Dec. 22, 1958, at 1005-1009. The Department of State Bulletin further stated that "<u>[n]either [the SFPT] nor any other agreement</u> <u>thereafter has purported to transfer the sovereignty of [Taiwan] to China</u>." *Id*. (emphasis added). The court held "that the sovereignty of [Taiwan] has not been transferred to China; and that [Taiwan] is not a part of China as a country, at least not as yet, <u>and not until and unless</u> <u>appropriate treaties are hereafter entered into</u>." *Id*. at 284 (emphasis added). Accordingly, the court held that under the deportation statute, the plaintiffs deportable to China could not be deported to Taiwan because Taiwan was not a part of China, and Taiwan was not a "country."

The D.C. Circuit reversed on the ground which had nothing to do with the court's power to examine the status of Taiwan for the purpose of the deportation statute, leaving this part of the holding intact. *Rogers v. Cheng Fu Sheng*, 280 F.2d 663, 108 U.S. App. D.C. 115 (D.C. Cir.

1960).  The D.C. Circuit reversed on the ground that the word "country" as used in the deportation statute had a broader meaning than "national sovereignties," considering that the purpose of the statute was "to reduce the number of 'undeportables' by increasing the number of places to which an alien under a final order of deportation may be sent." *Rogers*, 280 F.2d at 665.  Interestingly, the D.C. Circuit implicitly acknowledged that "[Taiwan] is neither a country itself nor part of any country, its status being in limbo[,]" but it did not restrain the court from adjudicating the case. *Id*. at 664.  Thus, prudential considerations do not restrain this Court from adjudicating the question presented by Plaintiffs.

Furthermore, declining to exercise jurisdiction on prudential grounds would be inconsistent with *Ungar v. Palestine Liberation Organization*, 402 F.3d 274 (1st Cir. 2005), where the First Circuit examined the Palestinian Liberation Organization ("PLO")'s non-statehood status.[8]  It would also be contrary to *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159

---

[8]      In *Ungar*, the question was whether the PLO, a governmental entity, was a sovereign state immune from suit under the Anti-Terrorist Act and the Foreign Sovereign Immunities Act. *Ungar*, 402 F.3d at 279.  The defendant PLO argued that the First Circuit was precluded from adjudicating the case because it presented a nonjusticiable political question.  The First Circuit found "this argument unconvincing," found that the plaintiffs "easily clear the six Baker hurdles," and turned to the merits of the case. *Id*. at 279-280. The First Circuit then considered the historical background: the United Kingdom's mandate over Palestine following World War I; the United Nation's plan to create two independent states (one Jewish, the other Arab) within the mandate territory; the  withdrawal of the British; the ensuing Arab-Israeli conflicts; the United Nations' resolutions concerning Palestine's self-determination and sovereignty, and granting the PLO observer status at the United Nations; the PLO's declaration of independence of Palestine in 1988; the 1994 agreement between Israel and PLO; and the United Nations' enhancement of the PLO's observer status. *Id*. at 284-289.  Applying the international law definitions of statehood codified in the Restatement (Third) of Foreign Relations and the Montevideo Convention of 1933, the First Circuit held that the PLO failed to meet the burden of demonstrating "statehood" and was not entitled to foreign sovereign immunity. *Id*. at 292, 294.

L. Ed. 2d 548 (2004), where the Court examined the United States' sovereignty over the Guantanamo Bay Naval Base in Cuba.[9]

On a final note, just as in *Ungar*, in this case, Defendant's "unhappiness" about this case "is understandable, but legally irrelevant." *Ungar*, 402 F.3d at 281. Although this case, just as *Ungar*, may "engender strong feelings," its "capacity to stir emotions is not enough to render an issue nonjusticiable." *Id.*

**B.  Plaintiffs Have Standing to Bring this Action.**

Both individual Plaintiffs and organizational Plaintiff the Taiwan Nation Party have standing to bring this action.  Individual Plaintiffs have standing because they suffered an injury-in-fact caused by Defendant's wrongful conduct that will be redressable by this Court's declaration of Plaintiffs' rights. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  Organizational Plaintiff the Taiwan Nation Party has standing because the injury suffered by its members is germane to the organization's purpose,

---

[9]      In *Rasul*, the Supreme Court addressed the issue whether federal courts have jurisdiction to consider the legality of detention of foreign detainees held at the Guantanamo Bay Naval Base in Cuba.  In *Rasul*, Australian and Kuwaiti detainees held at the Guantanamo Bay Naval Base filed habeas corpus petitions with this Court, challenging the legality of their indefinite detention under the United States laws.  This Court dismissed all the petitions for want of jurisdiction on the grounds that the aliens were detained outside of the sovereign territory of the United States. The D.C. Circuit affirmed.  The Supreme Court reversed.  In deciding the case, the Supreme Court considered the history of the Guantanamo Bay's possession by the United States and examined the 1903 Lease Agreement with Cuba, which provided that the United States exercised "complete jurisdiction and control" over the Guantanamo Base Naval Base, although Cuba retained "ultimate sovereignty" over it. *Id.* at 480, 487, *see also* Lease of Lands for Coaling and Naval Stations, Feb. 23, 1903, U.S.-Cuba, Art. III, T.S. No. 418.  The Supreme Court held that federal courts had jurisdiction to consider challenges to the legality of the detention of foreign detainees held at the Guantanamo Bay Naval Base. *Id.* at 483.

Justice Kennedy emphasized in his concurring opinion that the reason *why* federal courts had jurisdiction was grounded in the "status of Guantanamo Bay." *Id.* at 488.  Justice Kennedy reasoned, "Guantanamo Bay is in every practical respect a United States Territory[.]" *Id.* at 487. Further, "[f]rom a practical perspective, the indefinite lease of Guantanamo Bay has produced a place that belongs to the United States, extending the "implied protection" of the United States to it." *Id.*

and individual member participation is not required. *See generally Friends of the Earth v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

1.   Plaintiffs are not required to plead injury with particularity.

Plaintiffs alleged in the Complaint that they suffer "as a result of the legal limbo in which they find themselves[]" following the SFPT.  (Compl. at 3.)  Defendant moved to dismiss the action on the ground that Plaintiffs "have not alleged that any harm has resulted from being in . . . a . . . legal limbo," and that Plaintiffs' injury is "neither concrete and particularized nor actual or imminent." (Memo. Def.'s Mot. Dismiss at 6.)

The notice pleading rules, however, do not require Plaintiffs to plead injury with particularity.  As the D.C. Circuit reiterated less than three months ago, "[a]t each stage of trial, the party invoking the court's jurisdiction must establish the predicates for standing "with the manner and degree of evidence required at" that stage of trial. *Defenders of Wildlife,* 504 U.S. at 561." *Abigail Alliance for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006); *see also* FED. R. CIV. P. 9 (providing an exclusive list of matters that must be pled with particularity and omitting "injury").  This Court should not dismiss the Complaint for lack of specific facts describing Plaintiffs' injury because "[a]t the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 694 (1990))." *Abigail Alliance*, 469 F.3d at 132.  At a later procedural stage (*e.g.*, summary judgment motions), Plaintiffs would set forth the specific facts by affidavits and other evidence. *See id.*

Should the Court determine that at this stage Plaintiffs must plead injury with particularity, Plaintiffs will move to amend the Complaint accordingly.

### 2. Plaintiffs suffered an injury-in-fact.

Individual Plaintiffs have standing to bring this action because they suffered an injury-in-fact as a result of being in a legal limbo following the SFPT and being deprived of a recognized citizenship and nationality. In particular, they suffered a concrete injury as a result of the American Institute of Taiwan ("AIT")'s denial of their rights and privileges as United States nationals[10] (as opposed to citizens).[11] On March 29, 2006, Plaintiffs (all of whom at some time have been physically present in the United States[12]) in good faith attempted to submit duly

---

[10]    The INA defines a "national" as "a person owing permanent allegiance to a state," and a "national of the United States" as "a citizen of the United States, or . . . a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(21)-(22) (2006). For the purpose of the INA, "permanent" means "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." 8 U.S.C. § 1101(a)(31) (2006).

To the extent it is helpful to the Court, the Department of State Foreign Affairs Manual ("FAM") defines a "national," "*for the purpose of this chapter,*" as "a person on whom U.S. nationality has been conferred and who owes permanent allegiance to the United States but who is not a citizen []. All U.S. citizens are nationals, but U.S. nationals are not necessarily U.S. citizens . . . ." Dep't State 7 FAM 1113(i), *available at* http://foia.state.gov/masterdocs/07fam/07m1110.pdf (emphasis in the original).

[11]    The "INA" does not define a "citizen." *See* 8 U.S.C. § 1101 (2006).

The FAM, however, to the extent it is helpful to the court, defines a "citizen," "*for the purpose of this chapter,*" as "a person who acquired U.S. citizenship at birth or upon naturalization as provided by law. All U.S. citizens are nationals of the United States." Dep't State 7 FAM 1113(c), *available at* http://foia.state.gov/masterdocs/07fam/07m1110.pdf (emphasis in the original).

[12]    For the purpose of the INA, the "United States," "when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States." 8 U.S.C. § 1101(a)(38) (2006).

prepared passport applications to the AIT.[13]  The AIT, however, refused to accept the passport

applications and failed to provide an explanation setting forth the reasons for the refusal.  The

AIT's refusal to accept Plaintiffs' passport applications constituted a denial of their status as

United States nationals, and of their rights and privileges as United States nationals.[14]

  The denial of a recognized nationality, just as the denial of a recognized citizenship,

constitutes a legally cognizable injury-in-fact for the purpose of standing.  *See Wauchope v.*

*United States Dep't of State*, 985 F.2d 1407, 1411 (9th Cir. 1993) (holding that the plaintiffs had

standing to challenge the denial of their passports and reasoning that "[t]he plaintiffs have

suffered <u>a concrete injury</u> as a result of the United States' interpretation and enforcement of [a

provision of the immigration and nationality statute because] they <u>have been denied United</u>

<u>States citizenship</u>" and that "<u>[t]his showing of injury suffices to meet constitutional standing</u>

<u>concerns</u>.") (emphasis added); *Cort v. Herter*, 187 F. Supp. 683, 685 (D.D.C. 1960) (denying the

government's motion to dismiss and holding "that the complaint [for a judgment declaring the

plaintiff to be a citizen of the United States] presents a <u>controversy to which the judicial power</u>

<u>extends under the Constitution</u>, and that <u>authority</u> to hear and determine it has been <u>conferred</u>

---

[13]  United States nationals (as distinguished from citizens) also have the right to apply for passports.  22 U.S.C. § 212 (2006) ("Persons entitled to passport.  No passport shall be granted or issued to or verified for any other <u>persons</u> than those <u>owing allegiance</u>, whether citizens or not, <u>to the United States</u>.")(emphasis added).  United States nationals owe permanent allegiance to the United States.  *See* 8 U.S.C. § 1101(a)(22) (2006); *see* n.9, *supra*.

[14]  Refusal to accept an application for a citizenship or nationality benefit amounts to the denial of such application.  *See Agcaoili v. Gustafson*, 844 F.2d 620, 626 (9th Cir. 1988) (the plaintiffs brought a claim against the Immigration and Naturalization Service ("INS") for refusal to accept their applications for naturalization because they resided abroad; the court ordered the INS to process the applications and noted, "[b]y refusing to process the applications of the Filipino veterans, the INS effectively is preventing the applications from receiving the attention of the court"), *opinion withdrawn on other grounds*, 870 F.2d 462 (9th Cir. 1988) (opinion withdrawn on the grounds that the plaintiffs were no longer eligible for naturalization under amended law).

upon the District Court by the Declaratory Judgment Act and the Administrative Procedure Act")

(emphasis added); *Aguayo v. Christopher*, 865 F. Supp. 479 (N. D. Ill. 1994) (holding that the

plaintiff had standing to challenge the denial of his passport on Equal Protection grounds, and

issuing a declaratory judgment declaring Aguayo to be a citizen of the United States); *Guerrero*

*v. United States*, 691 F. Supp. 260 (D. N. Mariana Islands 1988) (granting a TRO requiring the

passport authorities to issue a citizen passport, and reasoning that depriving a person of

citizenship constitutes cruel and unusual punishment) (emphasis added).

       3.  Plaintiff's injury was caused by Defendant's conduct.

Plaintiffs' injury was caused by the wrongful conduct of the AIT, a department or agency

of the United States. *See Wood v. American Institute of Taiwan*, 351 U.S. App. D.C. 14, 286

F.3d 526 (D.C. Cir. 2002) (holding that the AIT is an agency or instrumentality of the United

States government and enjoys sovereign immunity for the purpose of the False Claims Act).  The

AIT refused to accept Plaintiffs' passport applications without providing any reasons for the

refusal, thereby failing to recognize Plaintiffs' nationality status and depriving them of their

rights and privileges as United States nationals.

       4.  Plaintiffs' injury is redressable by this Court's declaration of Plaintiffs'
           nationality status.

This Court's favorable declaratory judgment would redress Plaintiffs' injury because it

would affix Plaintiffs' nationality status for the purpose of the United States laws and

Constitution. *See Acheson v. Fujiko Furuso*, 212 F.2d 284, 292 (9th Cir. 1954) (noting that a

declaratory judgment under 8 U.S.C. § 1503 "adjudicates the nationality status of the plaintiff"

and "would result in the cessation of the deprivation of the right or privilege") (emphasis added).

In particular, it would affix Plaintiffs' nationality status for the purpose the INA's provisions

governing passports and travel.

This Court's declaration of Plaintiffs' rights does not need to redress every aspect of Plaintiffs' injury and does not preclude further relief. *See* 28 U.S.C. § 2201 (the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").

The cases cited by Defendant in support of its erroneous contention that Plaintiffs do not have standing to bring this action are not controlling because they arise in a different factual context.[15]

5. <u>Organization the Taiwan Nation Party has standing to bring this action on behalf of its members.</u>

The Taiwan Nation Party, an organization, has standing to bring this action on behalf of its members because the members suffered an injury-in-fact, which gives them the right to sue on their own behalf (*see* part II.B.2-4 of this Memo.); the injury is germane to the organization's purpose; and neither the claim asserted nor the relief requested requires individual member participation. *See generally Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

---

[15]     *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937) (an insurance company sought declaration that the insurance policy lapsed due to nonpayment of premiums); *Golden v. Zwickler*, 394 U.S. 103, 89 S. Ct. 956, 22 L. Ed. 113 (1969) (a distributor of anonymous handbills criticizing a congressman's voting record sought declaration that a New York statute criminalizing distribution of anonymous literature in connection with an election campaign was unconstitutional); *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 67 S. Ct. 556, 91 L. Ed. 754 (1947) (federal employees sought declaration that a statute prohibiting them from involvement in political activity was unconstitutional); *Raines v. Byrd*, 521 U.S. 881, 117 S. Ct. 2313, 138 L. Ed. 3d 849 (1997) (Congressmen sough declaration that the Line Item Veto Act was unconstitutional); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (environmental groups challenged a regulation that limited the application of the Endangered Special Act to the United States and the high seas to the exclusion of foreign nations); and *Allen v. Wright*, 468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) (parents of black public school students challenged the procedures for granting tax-exempt status to racially discriminatory private schools).

The purpose of the Taiwan Nation Party is to advocate the rights and privileges of the Taiwanese people, in particular (a) to establish a national identity for the Taiwanese people; and (b) to facilitate international investigations and procedures to obtain an internationally recognized nationality determination for the Taiwanese people. The injury asserted in this action—denial of Plaintiffs' rights and privileges under the United States Constitution and laws—is germane to the organization's purpose.

The Taiwan Nation Party is an adequate representative of its members in asserting the claim that the AIT, an agency of the United States, wrongfully refused to accept the passport applications. The relief requested—a declaration that the AIT wrongfully refused to accept the passport applications—would redress the grievance of all members of the Taiwan Nation Party.

## C. This Court Has Jurisdiction Authorized by Statutes.

The statutory basis for the Court's jurisdiction over this case exists in 28 U.S.C. § 1331; the INA § 360, 8 U.S.C. § 1503, with respect to the action brought by individual Plaintiffs; and the APA §§ 702 and 704.

### 1. This Court has Federal Question jurisdiction pursuant to 28 U.S.C. § 1331.

This Court has federal question jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331.

This action arises under the INA, the law of the United States, so far as it involves the Court's determination of Plaintiffs' nationality status under 8 U.S.C. § 1503.

This action also arises under the APA, the law of the United States, so far as it involves the Court's review of an agency action pursuant to 5 U.S.C. §§ 702 and 704.

This action also arises under the SFPT, a treaty of the United States, so far as it requires the Court to decide which benefits it confers to Plaintiffs.

Finally, this action arises under the Constitution of the United States because it involves this Court's declaration of Plaintiffs' constitutional rights as United States nationals.

Defendant misrepresents the Complaint by contending that "Plaintiffs bring this action based on General MacArthur's General Order No. 1 . . ., not on the Constitution, laws, or treaties of the United States." (Memo. Def.'s Mot. to Dismiss at 16.) Contrary to Defendant's mischaracterization of the Complaint, Plaintiffs do not rely on the General Order No. 1 as a basis for the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs aver, however, that the General Order No. 1 is helpful to the Court so far as it clarifies the historical background and enables the Court to interpret the SFPT.

To the extent Defendant argues that this Court cannot consider the General Order No. 1 because it supposedly was not issued by the United States, but instead was issued by the Allied Powers, Defendant's position is unsupported by historic record. (Memo. Def.'s Mot. to Dismiss at 17.) The President of the United States authorized General MacArthur to issue the General Order No. 1.

    2.   <u>This Court has jurisdiction over the action brought by individual Plaintiffs under the INA § 360, 8 U.S.C. § 1503.</u>

This Court has jurisdiction pursuant to 8 U.S.C. § 1503, which authorizes declaratory judgment actions for declaration of United States nationality.

Persons outside the United States[16] who have been denied rights and privileges as nationals are not confined by the procedures described in 8 U.S.C. § 1503(b). *Rusk v. Cort*, 369 U.S. 367, 379, 82 S. Ct. 787, 7 L. Ed. 2d 809 (1962), *see also Cort v. Herter*, 187 F. Supp. 683

---

[16]     For the purpose of 8 U.S.C. § 1503, the "United States" "means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States." 8 U.S.C. § 1101(a)(38).

(D.D.C. 1960), *aff'd by Rusk v. Cort*, 369 U.S. 367 (1962). They may apply for passports outside of the United States, and upon denial of their applications, institute an action in the U.S. District Court for the District of Columbia under the Declaratory Judgment Act and the APA for declaration of their nationality or citizenship status. *Id.*

### 3. This Court has jurisdiction pursuant to the APA §§ 702 and 704.

This Court has jurisdiction pursuant to 5 U.S.C. §§ 702 and 704, which authorize this Court to review "agency action," which resulted in a "legal wrong" or "adversely affected or aggrieved" a "person."

## D. The United States Waived Sovereign Immunity From This Action.

The United States waived sovereign immunity and expressly consented to an action by Plaintiffs for declaration of United States nationality by statutes: the INA § 360, 8 U.S.C. § 1503; and the APA § 702, 5 U.S.C. § 702. The courts have consistently held that the United States can waive sovereign immunity by specific statutory consent, and Defendant concedes this point. *See, e.g., United States v. Mitchell,* 463 U.S. 206, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983); Memo. Def.'s Mot. to Dismiss at 19.

### 1. Specific statutory consent by the INA § 360, 8 U.S.C. § 1503.

The INA § 360, 8 U.S.C. § 1503 constitutes specific statutory consent by the United States to be sued by "any person" who is "denied" a "right or privilege as a national of the United States" "by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States," as long as such person meets the conditions set forth in the statute. *See Beltran v. Brownell*, 121 F. Supp. 835 (S.D.Cal. 1954) (stating that "by 8 U.S.C.A. § 1503(a) the Government has consented to be sued in this court" as long as the action did not arise in exclusion proceedings and the five-year statute of limitations has not run.

2.   Specific statutory consent by the APA § 702, 5 U.S.C. § 702.

The APA § 702, 5 U.S.C. § 702 explicitly provides that an action brought under it "shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . ." 5 U.S.C. § 702 (2006) (emphasis added).   The APA § 702, 5 U.S.C. § 702 has been construed as specific statutory consent by the United States to be sued by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."   *See, e.g.,* *Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 525 (9th Cir. 1989) (holding that "[o]n its face, [the APA § 702] is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable"); *see also Sheehan v. Army & Air Force Exchange Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980) (holding that the APA § 702 "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief"), *rev'd on other grounds,* 456 U.S. 728, 102 S. Ct. 2118, 72 L. Ed. 2d 520 (1981).


II.   **PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiffs state a claim upon which relief can be granted.   Contrary to Defendant's mischaracterization of the Complaint, Plaintiffs do *not* base their entire cause of action on General McArthur's General Order No. 1.   Instead, Plaintiffs' base their cause of action on the INA § 360, 8 U.S.C. § 1503, which expressly authorizes a private cause of action for declaration of United States nationality; the APA § 702, which expressly authorizes a private cause of action

to challenge agency action; the SFPT, a self-executing treaty, which creates a private cause of action; and the United States Constitution.

### A. The INA § 360, 8 U.S.C. § 1503 Specifically Authorizes a Private Cause of Action for Declaration of Nationality.

The INA § 360, 8 U.S.C. § 1503 specifically authorizes a private cause of action for "declaration of United States nationality." According to the INA § 360 (a)-(b), 8 U.S.C. § 1503(a)-(b), "any person" who is "denied" a "right or privilege as a national of the United States" "by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States," has a private cause of action for declaration of nationality.[17]

---

[17]    Subsection (a) generally applies if a person is "within the United States":

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28, United States Code [Declaratory Judgment Act], against the head of such department or independent agency for a judgment declaring him to be a national of the United States . . . .

8 U.S.C. § 1503(a) (2006).

Subsection (b) generally applies if a person is "not within the United States":

> If any person who is not within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. Upon proof to the satisfaction of such diplomatic or consular officer than such application is made in good faith and has a substantial basis, he shall issue to such person a certificate of identity. From any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision . . . .

*See, e.g., Aguayo v. Christopher*, 865 F. Supp. 479 (N.D. Ill. 1994) (applying 8 U.S.C. § 1503 to vindicate a private right to a passport).

The authorities cited by Defendant for the proposition that certain statutes do not authorize a private cause of action are irrelevant and do not have any precedential value in this case.[18]

### B. The APA § 702, 5 U.S.C. § 702 Authorizes a Private Cause of Action to Challenge an Agency Action.

The APA § 702, 5 U.S.C. § 702 confers a right of action on persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" and entitles such persons to "judicial review thereof." The AIT is

---

8 U.S.C. § 1503(b) (2006).

In this case, Plaintiffs are in Taiwan, outside of the "United States," which is defined as "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States." 8 U.S.C. § 1101(a)(38) (2006).

However, "a person outside the United States" "is not confined to the procedures prescribed by 360 (b)" but may apply outside of the United States for United States passports, and upon denial of such applications, institute an action in a federal district court under the Declaratory Judgment Act and the Administrative Procedure Act for declaratory and injunctive relief. *Rusk v. Cort*, 369 U.S. 367, 379, 82 S. Ct. 787, 7 L. Ed. 2d 809 (1962) (emphasis added). In light of *Rusk*, Plaintiffs who are in Taiwan, outside of the United States, properly brought a declaratory judgment action in this Court action, challenging the denial of their passports by the AIT in Taiwan.

[18]    Defendant improperly cites *Standford v. Potomac Elec. Power. Co.*, 394 F. Supp. 2d 81 (D.D.C. 2005) for the proposition that there is no private cause of action under the Occupational Safety and Heath Act ("OSHA"), despite that the court in *Stanford never* reached this issue on the merits. "[B]ecause the plaintiff failed to respond to the defendant's argument that no private cause of action exists under OSHA, the Court considers the defendant's position on this claim conceded." *Stanford*, 394 F. Supp. at 92, 89 n.10.
Defendant's reliance on *Alexander v. Sandoval*, 532 U.S. 275 (1999) is unavailing because in this case, unlike *Alexander*, the INA specifically authorizes a private cause of action for declaration of nationality as demonstrated above. In this case, unlike *Alexander*, the INA displays intent to create not just a private right but also a private remedy—a declaration of United States nationality.

Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss – Page 25

an "agency" of the United States. *See Wood v. American Institute of Taiwan*, 351 U.S. App. D.C. 14, 286 F.3d 526 (D.C. Cir. 2002) (holding that the AIT is an agency or instrumentality of the United States government and enjoys sovereign immunity for the purpose of the False Claims Act). The AIT's refusal to accept Plaintiffs' passport applications constituted an "agency action," which is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551 (13) (2006). Plaintiffs suffered a "legal wrong" and were "adversely affected or aggrieved" by the AIT's refusal to accept their passport applications as demonstrated in Part I.B.2, *supra*.

### C. Article 2(b) and Article 23(a) of the SFPT are Self-Executing and Create a Private Cause of Action.

Because Article 2(b) and Article 23(a) of the SFPT are self-executing, they create a private cause of action without any need for implementing legislation. Furthermore, other court treated territorial provisions of the SFPT as self-executing and guaranteeing individual rights.

#### 1. Article 2(b) and Article 23(a) of the SFPT are self-executing.

United States treaties are presumed self-executing, and United States courts are "bound to give effect" to them. RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 111(3), *see also* Richard B. Lillich, *Invoking International Human Rights Law in Domestic Courts*, 54 U. Cin. L. Rev. 367, 384 (1985). Giving full effect to treaties in the United States courts is consistent with the Supremacy Clause of the Constitution. Under the Supremacy Clause, "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. CONST. art. VI, §2.

The treaties are deemed non-self-executing only:

> (a) if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation,

(b) if the Senate in giving consent to a treaty, or Congress by resolution, requires implementing legislation, or

(c) if implementing legislation is constitutionally required.

RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 111(4).

None of these factors apply to the SFPT. First, nothing in the wording of the SFPT indicated an intention that the SFPT shall not become effective as domestic law without the enactment of the implementing legislation. By virtue of being a territorial treaty and embodying a final settlement of the territories between the Allied Powers and Japan, the SFPT shows an intention that it shall become effective immediately upon ratification by the parties. Y. Frank Chiang, *One-China Policy and Taiwan,* 28 Fordham Int'l L. J. 1, 8 (2004) ("territorial treaties are self-executing"). Second, the United States Senate, in giving "advise and consent to the ratification" of the SFPT on March 20, 1952, did not require any implementing legislation, by resolution or otherwise.[19] 98 Cong. Rec. 2564, 2594 (1952). Third, no implementing legislation is constitutionally required for the SFPT.

In determining whether a treaty is self-executing, courts look at the intent of the parties as manifested by the language of the instrument. *Diggs v. Richardson,* 555 F.2d 848, 851, 180 U.S. App. D.C. 376 (D.C. Cir. 1976). Article 2(b) and Article 23(a) of the SFPT demonstrate intent to

---

[19]    Indeed, the resolution of ratification by the Senate Foreign Relations Committee contains only one reservation, which has nothing to do with requiring implementing legislation for the SFPT. Instead, it has to do with the Soviet Union's claim to certain Japanese islands. The reservation states,

> nothing the treaty contains is deemed to diminish or prejudice, in favor of the Soviet Union, the right, title, and interest of Japan, or the Allied Powers . . . in and to South Sakhalin and its adjacent islands, the Kurile Islands, the Habomai Islands, the Island of Shikotan or any other territory, rights, or interests possessed by Japan on December 7, 1941, or to confer any right, title, or benefit therein or thereto on the Soviet Union.

*See* 98 Cong. Rec. 2594 (1952).

create a private cause of action against the United States. By designating the United States as the principal occupying Power in Article 23(a), and by further confirming the jurisdiction of the United States Military Government over Taiwan in Article 4(b), the SFPT created the United States' obligation to guarantee fundamental rights to the persons living in the territory deemed occupied by the United States under the SFPT. The corollary to the United States' obligation is these persons' private right of action to enforce their fundamental rights in the United States courts.

2. Self-executing treaties guarantee individual rights.

Self-executing treaties confer rights on individuals, without the need for any implementing legislation. *United States v. Verdugo-Urquidez*, 939 F.2d 1341, 1358 n.17 (9th Cir. 1991) (concluding that a Mexican defendant had a <u>private right</u> to challenge the legality of his abduction under the extradition treaty with Mexico), *rev'd on other grounds*, *United States v. Alvarez-Machain*, 504 U.S. 655, 112 S. Ct. 2188, 119 L. Ed. 2d 441 (1992) (reversing on the ground that the extradition treaty with Mexico does not prohibit abductions). If a treaty "is self-executing," "<u>a court must enforce it on behalf of an individual</u>[.]" *Alvarez-Machain*, 504 U.S. at 667 (emphasis added). "Self-executing treaties are those that immediately create rights and duties of private individuals which are enforceable and are to be enforced by domestic tribunals." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 257 n.34 (2d Cir. 2003) (internal citations and quotations omitted). Judicial precedents show that self-executing treaties are a source of individual legal rights enforceable in courts. *See, e,g, Guerrero v. United States*, 502 F.2d 90, 99 (9th Cir. 1974) (holding that the 1947 Trusteeship Agreement for the Former Japanese Mandated Islands "is a source of individual legal rights" despite that these rights "are not precisely

defined[,]" and holding that the plaintiffs could enforce these rights in the United States courts after exhausting local remedies).

To the extent Defendant relies on *United States v. Emuegbunam*, 268 F.3d 377 (6th Cir. 2001) for a contrary proposition, the Sixth Circuit case is distinguishable.[20]

### 3. Other courts treated other provision of the SFPT as self-executing and guaranteeing individual rights.

The issue whether Article 2(b) and Article 23(a) of the SFPT guarantee individual rights is an issue of first impression.[21] Other courts, however, treated other provisions of the SFPT as

---

[20] Defendant cites *Emuegbunam* in support of its mistaken contention that the SFPT does not provide a basis for Plaintiffs to seek a declaration of their rights under the SFPT. *Emuegbunam*, 263 F.3d 377 (concluding that the Vienna Convention on Consular Relations did not create the defendant's right to dismissal of his indictment, reversal of his conviction, or suppression of evidence against him). *Emuegbunam*, however, is distinguishable. In *Emuegbunam*, the Preamble to the Vienna Convention on Consular Relations "expressly disclaims the creation of any individual rights" by stating that the purpose of the Convention "is **not to benefit individuals** but to ensure the efficient performance of functions by consular posts on behalf of their respective States." *Emuegbunam*, 268 F.3d at 392, citing Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 79, 596 U.N.T.S. 261, 262 (emphasis in the case). In this case, by contrast, the language of the SFPT does *not* expressly disclaim the creation of any individual rights under the Treaty. Thus, *Emuegbunam* does not support a conclusion that the SFPT does not create any individual rights.

In addition, the court in *Emugbunam* discussed the possibility of federal courts vindicating private rights if "a treaty creates fundamental rights on a par with those protected by the Constitution." *Id*. at 390 (emphasis added). This is precisely the kind of rights Plaintiffs are asking this Court to declare.

[21] Research revealed only one case where the court *specifically* addressed the issue whether an unrelated Article 26 of the SFPT guaranteed individual rights: *Mitsubishi Materials Corp. v. Superior Court of Orange County*, 113 Cal. App. 4th 55, 6 Cal. Rptr. 3d 159 (2003). In *Mitsubishi*, American prisoners of war ("POW") sued Japanese companies to recover compensation for forced labor during World War II pursuant to a California statute. As a preliminary matter, the court "acknowledge[ed] the obvious[,]" that the SFPT was binding on the court as "the supreme Law of the land." *Id*. at 61 (emphasis added). The court held that the POWs' claims were barred by Article 16(b) of the SFPT, which provided for waiver of "all reparations claims of the Allied Powers, other claims of the Allied Powers *and their nationals* arising out of any actions taken by Japan *and its nationals* in the course of the prosecution of the war . . . ." *Id*. at 69 (emphasis in the case).

The plaintiffs in *Mitsubishi* argued that the waiver provision did not preclude recovery in light of Article 26 of the SFPT, the "most favored nation" clause. Article 26 provided in relevant

self-executing and guaranteeing individual rights. In *United States v. Shiroma*, 123 F. Supp. 145 (D. Haw. 1954), for instance, the court treated another territorial provision of the SFPT—Article 3 dealing with the disposition of the Ryukyu Islands following World War II—as self-executing and guaranteeing individual rights. In *Shiroma*, Defendant Shiroma, who was born in Okinawa and became a legal resident of Hawaii, was arrested for failure to notify the Attorney General in writing of his current address in violation of the INA. The INA required all aliens to notify the Attorney General in writing of their change of address within ten days. 8 U.S.C. §§ 1305, 1306(b). Shiroma argued that he was not required to report his current address because he was not an "alien" and owed permanent allegiance to the United States pursuant to Article 3 of the SFPT.

Article 3 of the SFPT provided for the United States' "sole administering authority" over the Ryukyu Islands, including Okinawa, following World War II. By examining whether Shiroma was not an "alien" as a result of Article 3 of the SFPT, the court treated Article 3 of the SFPT as a potential source of individual rights enforceable in the United States courts. Although the court ultimately concluded that pursuant to Article 3 of the SFPT, Shiroma owed permanent allegiance to Japan as opposed to the United States, and therefore was an "alien" subject to the

---

part that "[s]hould Japan make a . . . war claims settlement with any State granting that State greater advantages than those provided by the present Treaty, those same advantages shall be extended to the parties to the present Treaty." *Id.* at 74-75. The POWs argued that because the government of Dutch Indonesia got a better "side deal" with Japan involving the government of Japan paying private Dutch citizens about ten million in reparations, the waiver provision did not preclude the POWs' recovery. The court held that Article 26 of the SFPT "creates no private rights" because Article 26 provides that "those same advantages shall be extended to the *parties*" to the SFPT, and "[i]ndividual Americans citizens are not parties to the treaty, only the United States is." *Id.* at 75.

This case is distinguishable from *Mitsubishi* because Article 3(b) and Article 23(a) of the SFPT, unlike Article 26 of the SFPT, do not expressly limit the "advantages" to the "parties" to the SFPT—states as opposed to individuals.

requirement to report his change of address, *Shiroma* stands for the proposition that territorial provisions of the SFPT are self-executing and can guarantee individual rights.

Similarly, in *Hair v. United States*, 52 Fed. Cl. 279 (2002), *aff'd*, 350 F.3d 1253 (Fed. Cir. 2003), the court treated the SFPT as self-executing and guaranteeing individual rights.  In *Hair*, American prisoners of war ("POW") sued the United States for taking without just compensation in violation of the Fifth Amendment.  The POWs claimed that the United States' ratification of the SFPT, which in Article 16(b) waived "all reparation claims . . . of the Allied Powers and their nationals" against Japan, constituted a taking.  Although the Court of Federal Claims ultimately concluded that the six-year statute of limitation has run, divesting the Court of Federal Claims of subject matter jurisdiction, *Hair* stands for the proposition that the SFPT can give rise to a private cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

Respectfully submitted,

Charles H. Camp (D.C. Bar # 413575)
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 349-3905
Facsimile: (202) 349-3906
Email:  ccamp@charlescamplaw.com

**Counsel for Plaintiffs**

February 16, 2007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. ROGER C. S. LIN, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-1825 (RMC) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court on Defendant's Motion to Dismiss (the "Motion").

The Court having reviewed said Motion and considered all arguments of the parties, it is hereby:

ORDERED AND ADJUDGED that the Motion is denied.

**DONE and ORDERED this** ___ **day of** _____ **2007.**

_____
Honorable Rosemary M. Collyer
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum was electronically served upon the following counsel for Defendant via ECF on the 16th day of February 2007, as well as on this 22nd day of February 2007:

Adam D. Kirschner, Esquire
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044

Charles H. Camp