**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| LIN, ET. AL, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 06-1825 (RMC) |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss**

Plaintiffs are asking this Court to advise them of what rights, <u>if any</u>, they may have under United States laws.  But, to give such an advisory opinion in this matter, the Court would need to intrude into an area reserved to the political branches; specifically, this Court would have to determine the status of Taiwan.  Plaintiffs contend that they are merely asking this Court to rely on legislative and executive determinations already made.  In their complaint, however, plaintiffs rely on the erroneous assumption that the United States exercises sovereignty over Taiwan and that Taiwan is a territory subject to the jurisdiction of the United States.  Such an assumption is inconsistent with the determinations made by the political branches.  For this Court to hold otherwise would be to answer a non-justiciable political question.

Plaintiffs' complaint suffers from a number of other fatal defects as well.  In an effort to overcome these defects, plaintiffs attempt to change the nature of their cause of action through their opposition to defendant's motion to dismiss.  A party may not amend its complaint through its opposition to a motion to dismiss.  And, of course, plaintiffs cannot rely on the Administrative Procedures Act ("APA") and the Immigration Nationality Act ("INA"), two

statutes not even cited in their complaint, or the claim that the American Institute of Taiwan ("AIT") refused to accept their passport applications, also not mentioned in the complaint, to avoid dismissal.

Nothing in plaintiffs' opposition overcomes the reasons for dismissal set forth in defendant's motion. Besides presenting a non-justiciable political question, this Court does not have subject matter jurisdiction because plaintiffs have failed to adequately establish standing, cite to any statute in their complaint that confers federal question jurisdiction on this Court, or demonstrate that the United States has waived sovereign immunity. Plaintiffs also have failed to state a claim upon which relief may be granted because they have not shown that there is a private right of action. Given the multiple fatal defects in plaintiffs' complaint, any one of which is sufficient to warrant dismissal, this action should be dismissed.

## ARGUMENT

### I. THIS COURT LACKS SUBJECT-MATTER JURISDICTION

#### A. This Action Presents a Quintessential Non-Justiciable Political Question

As defendant explained in its opening brief, this action falls within the criteria courts use in determining whether an action presents a non-justiciable political question. See Defendant's Motion to Dismiss ("Defs. Mem.") at 8 n.3, 14 (citing Baker v. Carr, 369 U.S. 186, 217 (1962)). "To find a political question, [a court] need only conclude that one factor is present, not all." See Bancoult v. McNamara, 445 F.3d 427, 432 (D.C. Cir. 2006) (citation and quotation marks omitted). Although plaintiffs recast the Baker criteria into the three inquiries set forth in Justice Powell's concurrence Goldwater v. Carter, 444 U.S. 996, 998 (1979) (Powell, J., concurring), see Pl. Opp. at 3, the criteria the Supreme Court identified in Baker remain the same. Under any

analytical approach, the result is the same - this case presents a non-justiciable political question.

Plaintiffs erroneously assert that they fall outside the scope of each of the criteria because they allegedly are merely asking this Court to interpret different legal instruments and rely on the policy determinations made apparent in those instruments. See Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 6-14. Yet, plaintiffs ignore the reality that for this Court to reach the ultimate question of whether plaintiffs are entitled to certain fundamental rights under United States laws, the Court would need to determine the status of Taiwan. See Pl. Opp. at 9, 10 (asserting that they are merely seeking a declaration of their rights "based on pre-existing executive and legislative determinations considering Taiwan's status"). Contrary to plaintiffs' contention, the United States neither exercises sovereignty over Taiwan, nor is Taiwan subject to the jurisdiction of the United States; indeed, the political branches have made contrary determinations. Compare Plaintiffs Complaint ("Compl.") at ¶ 49 (the United States "is still holding sovereignty over Taiwan") (emphasis added) and Compl., Relief Requested (a)-(g) (contending that "[p]laintiffs, by virtue of living in a territory subject to the jurisdiction of the United States," have certain rights) with Defs. Mem. at 7-15 (discussing the political branches' determination that the United States does not exercise sovereignty or hold jurisdiction over Taiwan).

This case presents a very different situation from those as to which the political branches have determined the status of a territory and the Court is then asked to examine what results from such a status. See Baker, 369 U.S. at 212 ("once sovereignty over an area is politically determined and declared, courts may examine the resulting status and decide independently whether a statute applies to that area") (emphasis added) (footnotes omitted). The "Insular

Cases" following the Spanish-American War, cited by plaintiffs, are very instructive on this point.  See Pl. Opp. at 9 n.7; see also, e.g., Balzac v. Porto Rico, 258 U.S. 298 (1922); Dorr v. United States, 195 U.S. 138 (1904).  In those cases, the status of each territory was politically determined and the courts were considering what resulted from that status.  As plaintiffs maintain, "[i]n the "Insular Cases, Articles II and III of the Treaty of Paris provided for Spain ceding to the United States the island of Puerto Rico and the Philippine Islands."  See Pl. Opp. at 9 n.7 (emphasis added).  In this case, plaintiffs do not point to any language in the San Francisco Peace Treaty ("SFPT"), on which they now claim to rely, in which Taiwan was ceded to the United States.  In fact, the Taiwan Relations Act of 1979, 22 U.S.C. § 3301, et seq., and the relevant Executive Orders support the conclusion that Taiwan was never ceded to the United States.  See Defs. Mem. at 10-14.  Furthermore, as defendant demonstrated in its opening brief, it was clear United States policy that prior to 1979, the Republic of China exercised sovereignty over Taiwan.  See Defs. Mem. at 13 n.4; Mutual Defense Treaty, Article VI, Treaties and International Acts Series 3178 (1955) ("the terms 'territorial' and 'territories' shall mean in respect of the Republic of China, Taiwan and the Pescadores").

The "judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory."  Baker, 369 U.S. at 212.[1]  The political branches have made it clear that the

---

[1] The cases cited by plaintiffs support this proposition.  See Pl. Opp. at 8-12; see also, e.g., Wang v. Masaitis, 416 F.3d 992, 995 (9th Cir. 2005) ("China's sovereignty over Hong Kong (and by corollary Hong Kong's subsovereign status) has been resolved by the executive branch, and we do not question that judgment") (emphasis added); Cheng Fu Sheng v. Rogers, 177 F.Supp. 281 (D.D.C. 1959)(court was "guided by the attitude of the Department of State on the question whether [Taiwan] is to be regarded as part of China") (emphasis added) (rev'd on other grounds in Rogers v. Cheng Fu Sheng, 280 F.2d 663 (D.C. Cir. 1960)); United States v. Shiroma, 123 F.Supp. 145, 149 (D. Haw. 1954) (stating that "[t]he reasonable construction of treaty terms by the State Department, acquiesced in by the other signatory powers, is entitled to great weight"

United States does not exercise sovereignty over Taiwan and that Taiwan is not a territory subject to the jurisdiction of the United States. See e.g., Executive Order No. 13014 (August 15, 1996), 61 Fed. Reg. 13014 ("[i]n light of the recognition of the People's Republic of China by the United States of America as the sole legal government of China," this Order is to "facilitate the maintenance of commercial, cultural, and other relations between the people of the United States and the people on Taiwan without official representation or diplomatic relations"); Taiwan Relations Act of 1979, 22 U.S.C. § 3301(b)(3) (declaring that the policy of the United States is, inter alia, "to make clear that the United States decision to establish diplomatic relations with the People's Republic of China rests upon the expectation that the future of Taiwan will be determined by peaceful means."). For this Court to hold that plaintiffs are entitled to certain fundamental rights under United States laws, this Court would have to first reach a decision that is directly contrary to the one made by the political branches - with all of the potentially adverse foreign policy and national security consequences that such a decision inevitably would entail.

Even if the political branches had not made it obvious that the United States does not exercise sovereignty over Taiwan and that Taiwan is not a territory subject to the jurisdiction of the United States, this case would still present a non-justiciable political question.² The

---

and, therefore, the court relied on an opinion letter from the State Department to find that defendant was not a national of the United States) (emphasis added).

²Plaintiffs cite Ungar v. Palestine Liberation Organization, 402 F.3d 274 (1st Cir. 2005) and Rasul v. Bush, 542 U.S. 466 (2004) for the proposition that a Court could examine the status of a territory. See Pl. Opp. at 13. However, neither case involved the judiciary making a determination contrary to the one made by the political branches regarding the status of the area in question. See Ungar, 402 F.3d at 281 ("the district court's resolution of [the existence vel non of statehood for jurisdictional purposes] is not incompatible with any formal position thus far taken by the political branches") (emphasis added); Rasul, 542 U.S. at 480-481 ("[b]y the express terms of its agreements with Cuba, the United States exercises complete jurisdiction and

determination of who is sovereign of a territory is non-justiciable.  See Jones v. United States, 137 U.S. 202, 212 (1890) ("[w]ho is the sovereign, *de jure* or *de facto*, of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive of any government conclusively binds the judges, as well as all other officers, citizens, and subjects of that government.  This principle has always been upheld by this court, and has been affirmed under a great variety of circumstances.") (citing cases as far back as 1818) (emphasis in original); Boumediene v. Bush, __ F.3d __, 2007 WL 506581 at *7 (D.C. Cir. February 20, 2007) (petition for certiorari pending) ("[t]he determination of sovereignty over an area, the Supreme Court has held, is for the legislative and executive departments.") (emphasis added) (internal citations omitted).

This case falls squarely within the criteria that the Supreme Court has identified as presenting a non-justiciable political question and plaintiffs' efforts to distinguish this case and its progeny are without merit.  See Baker, 369 U.S. at 217 (listing the criteria a court is to use for analyzing whether a cause of action presents a non-justiciable political question); Defs. Mem. at 8 n.3, 14.  Although plaintiffs argue that there is "no textually demonstrable commitment to political branches," Pl. Opp. at 6, "[p]olitical recognition [of a government] is exclusively a function of the Executive."  See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 410 (1964).  And, while plaintiffs argue that there is "no lack of judicially discoverable and

---

control over the Guantanamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses.  Respondents themselves concede that the habeas statute would create federal-court jurisdiction over the claims of an American citizen held at the base") (internal quotations and citations omitted); see also id. at 475 ("[t]he question now before us is whether the habeas statute confers a right to judicial review of the legality of executive detention of aliens in a territory over which the United States exercises plenary and exclusive jurisdiction, but not 'ultimate sovereignty.'").

manageable standards," Pl. Opp. at 7, defendant explained in its opening brief that the entire complaint is based on an order issued by General Douglas MacArthur and it is unclear what standards this Court would use to interpret that Order and how it relates to all other relevant legal instruments, including the Taiwan Relations Act.  See Defs. Mem. at 14.[3]  Plaintiffs are also incorrect that this Court would not have to make an initial policy determination but would just have to rely on the one made by the political branches.  See Pl. Opp. at 8.  As explained above, plaintiffs are asking this Court to make an initial policy determination in an area that is reserved to the political branches.  See Baker, 369 U.S. at 217 (holding that a cause of action presents a non-justiciable political question if there is an "impossibility of deciding [the matter] without an initial policy determination of a kind clearly for nonjudicial discretion").

In addressing the remaining Baker factors, plaintiffs rely on the erroneous assumption that this Court does not need to determine the status of Taiwan.  See Pl. Opp. at 8-14.  However, as explained above, it is impossible to decide the question of whether plaintiffs are entitled to any rights under United States laws without first deciding the nature of the United States relations with Taiwan and, in particular, the status of Taiwan.  Because the political branches have made it clear that the United States does not exercise sovereignty over Taiwan and Taiwan is not a territory subject to the jurisdiction of the United States, there is an "impossibility of a court's undertaking independent resolution [of this issue] without expressing lack of respect due coordinate branches of government."  See Baker, 369 U.S. at 217.  In fact, there is an "unusual

---

[3]As defendant has explained in its opening brief, it is also unclear what standards this Court would use to interpret treaties outside of the United States.  See Defs. Mem at 14-15; Hwang Geum Joo v. Japan, 413 F.3d at 51, 53 (holding that it is a non-justiciable political question to decide "whether [foreign] governments of the [plaintiffs in the case] resolved their claims in negotiating peace with Japan" following World War II) (citation omitted)).

need for unquestioning adherence to a political decision already made," id., because of the geopolitical implications of the issues surrounding the Taiwan Straits.  For the same reason, it is particularly important that the United States speaks with one voice.  See Baker, 369 U.S. at 217 (stressing that in determining whether a cause of action presents a non-justiciable political question, a court should decide whether there is the "potentiality of embarrassment from multifarious pronouncements by various departments on one question"); see also Crosby v. National Foreign Trade Council 530 U.S. 363, 381 (differences in state law and federal law "compromise the very capacity of the President to speak for the Nation with one voice in dealing with other governments").

The Executive and Congress have charted a particular path in the United States' relationship with Taiwan and the People's Republic of China and the potential fallout from judicial interference in these relationships could have far ranging consequences.  See Defs. Mem. at 10-14 (explaining that the United States has entered in a series of communiques with the PRC concerning Taiwan in addition to the Executive Orders and the Taiwan Relations Act that defines the United States relations with Taiwan).  For the judiciary to question that particular path could well upset the balance of power in the Taiwan Straits and destabilize U.S.-Taiwan-China relations.  See id.  For the several reasons cited above, this action raises a non-justiciable political question.

      **B.**      **Plaintiffs' Complaint Suffers from other Fatal Jurisdictional Defects**

            **1.**      **Plaintiffs Cannot Amend their Complaint through their Opposition**

The fact that this action is based on a non-justiciable political question is sufficient grounds for the Court to dismiss this case.  However, the complaint suffers from a number of

other defects warranting dismissal. First, plaintiffs have failed to establish that they have Article III standing. See Defs. Mem. at 5-7. Second, plaintiffs have failed to establish the basis for this Court to have federal question jurisdiction. See id. at 16-18. Third, the United States has not waived its sovereign immunity. See id. at 18-19. Finally, plaintiffs have failed to state a claim upon which relief may be granted because they cannot establish the existence of a private cause of action. See id. at 19-20.

In an effort to overcome these defects, plaintiffs attempt to amend their complaint through their opposition. However, it is well-settled that a plaintiff cannot cure its defective complaint through de facto amendments submitted in response to a motion to dismiss. See, e.g., Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F.Supp. 2d 165, 170 (D.D.C.2003) (Collyer, J.) ("[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal citation and formatting omitted); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.1996) (allegations in response to a motion not sufficient to amend the complaint). Contrary to plaintiffs' contention, this is not an issue of notice pleading. See Pl. Opp. at 15. Rule 8 of the Federal Rules of Civil Procedure states that each claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a). A complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." See Randolph v. ING Life Insurance and Annuity Co., 2007 WL 565872 at *6 (D.D.C. February 20, 2007) (citing Dura Pharm. v. Broudo, 544 U.S. 336, 346 (2005) (internal quotation marks omitted). Here, plaintiffs are seeking to add new claims and new factual allegations to make out those allegations.

Plaintiffs assert for the first time in this litigation that their cause of action is based on AIT's alleged refusal to accept plaintiffs' passport applications. Compare Pl. Opp. at 17 (alleging that AIT "refused to accept the passport applications" of the plaintiffs "and "failed to provide an explanation setting forth the reasons for the refusal") with Compl. (not making any such allegations). Because of these new passport application allegations, plaintiffs are now claiming that they have brought this action under the APA and the INA as a basis for jurisdiction. See id. at 20. However, they do not cite either statute in their complaint. See Compl. Moreover, based on the allegations in their complaint, plaintiffs have failed to state a claim under either the APA or the INA. See id. First, plaintiffs do not allege in their complaint any agency action, which is a prerequisite to have a claim fall under the APA.[4] See 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"). Second, plaintiffs' complaint is devoid of any claim that plaintiffs have been denied any right or privilege as a national of the United States, a prerequisite for their claim to fall under the nationality clause of the INA. See 8 U.S.C. § 1503(a), (b) (stating that a person may have a cause of action after claiming "a right or privilege as a national of the United States" and being "denied such right or privilege").

The relief that plaintiffs seek in their complaint is far broader than merely an order

---

[4] There is also a question whether AIT is even considered an agency for purposes of the APA. Because plaintiffs have not pled an APA claim, the Court need not reach this issue. In any event, plaintiffs' reliance on Wood v. American Institute of Taiwan, 286 F.3d 526 (D.C. Cir. 2002) for the proposition that the APA is considered an agency is misplaced. See Pl. Opp. at 17-18. That case dealt with the issue of whether AIT enjoys sovereign immunity when being sued under the False Claims Act. See id. at 531. It did not address any APA claim. Under the Taiwan Relations Act, AIT is "a nonprofit corporation." See 22 U.S.C. § 3305(a)(1).

declaring that are entitled to a passport.[5]  Rather, this case involves a request for relief that would require this Court to determine the status of Taiwan.  See Compl. at § 3 ("[p]laintiffs, all or whom reside in Taiwan, have filed this action to have this Court determine what fundamental rights, if any, they may have under United States laws") (emphasis added); see also Pl. Opp. at 2 ("question presented in this case is whether the United States Constitution and law guarantee any rights to Plaintiffs")(emphasis added).  Therefore, this action should be dismissed with prejudice for the reasons stated in the United States' opening brief.

### 2. Plaintiffs Lack Standing

The only injury plaintiffs specify in their complaint is that they are suffering as a result of being in some vague "legal limbo."  See Compl. ¶ 3.  Plaintiffs have implicitly acknowledged

---

[5]Even if the passport applications issue had been properly presented, that claim would have warranted dismissal.  Plaintiffs have only alleged that AIT "refused to accept the passport applications."  See Pl. Opp. at 17.  However, plaintiffs have not alleged that the apparent refusal to accept was because AIT was refusing to process the applications.  See Agcaloili v. Gustafson, 844 F.2d 620, 626 (9th Cir. 1988) ("refusing to process the applications" is akin to denying the applications).  The applications may have had administrative deficiencies.  See 22 U.S.C. § 213 (each person must "submit a written application which shall contain a true recital of each and every matter of fact which may be required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of any such passport") (emphasis added).  Therefore, as presented in their opposition, it is not clear that plaintiffs' passport claim would be ripe even if it were assumed that plaintiffs are nationals of the United States.  See 8 U.S.C. § 1503(a) ("an action . . . may be instituted only within five years after the final administrative denial of such right or privilege") (emphasis added).  Without plaintiffs properly pleading this claim, defendant is unable to fully respond to plaintiffs' claims.  In any event, plaintiffs would have failed to state a claim upon which relief may be granted because they are not nationals of the United States under 8 U.S.C. § 1503 and, therefore, are not entitled to any right or privilege given to such nationals.  As described above, and in defendant's opening brief, courts defer to the determination made by the political branches regarding the status of a territory and the political branches have determined that the United States does not exercise sovereignty over Taiwan and Taiwan is not subject to the jurisdiction of the United States.  See Baker v. Carr, 369 U.S. at 212 ("the judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory").

that being in some vague legal limbo is insufficient grounds for them to establish standing because they now attempt to assert that the injury they suffered was AIT's alleged refusal to accept their passport applications. See Pl. Opp. at 16-18. However,"[p]laintiffs cannot now attempt to assert that they have standing based on claims that are entirely absent from their complaint." See Randolph v. ING Life Insurance and Annuity Co., 2007 WL 565872 at *6. Therefore, the only claim of injury before the Court is the alleged claim of being in some vague legal limbo. As defendant has explained in its opening brief, such an injury is insufficient to establish standing, especially considering that plaintiffs have also failed to show that the alleged injury was caused by defendant's unlawful conduct and that any requested relief would likely redress such an injury. See Defs. Mem. at 5-7; see also Allen v. Wright, 468 U.S. 747, 751 (1984) ("[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").[6]

### 3.   Plaintiffs' Complaint Fails to cite any Authority that Confers Jurisdiction on this Court

Plaintiffs base their entire cause of action on General Douglas MacArthur's General Order. See Defs. Mem. at 16-18. This Order does not establish federal question jurisdiction and plaintiffs do not contend otherwise. See Pl. Opp. at 20-22. Instead, plaintiffs, in their opposition brief, now attempt to argue that this action arises under the INA, the APA, the SFPT, and the

---

[6]The organizational plaintiff, the Taiwan Nation Party, also lacks standing because its individual members would not otherwise have standing in their own right. See Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 181 (2000) ("[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit") (emphasis added).

Constitution. See id. However, on closer inspection, none of these apply.

With regard to the INA and the APA, plaintiffs do not allege a violation of either statute in their complaint, and, therefore, this action does not arise under either statute. See Fed. Rule Civ. P. 8 (pleadings must set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends"). As explained above, plaintiffs do not allege in their complaint that they were wronged by any agency action, and thus they have not raised an APA claim. See, supra, at 9-10. Nor does plaintiffs' complaint contain any allegation that they have been denied any right or privilege as a national of the United States, a prerequisite for their claim to fall under the nationality clause of the INA. See, supra, at 9-10.

Plaintiffs' action also does not arise under the Constitution or the SFPT. See 28 U.S.C. § 1331 (requiring that a civil action arises "under the Constitution, laws, or treaties of the United States" for a court to be conferred federal question jurisdiction). Plaintiffs argue that this action arises under the Constitution because "it involves this Court's declaration of Plaintiff's constitutional rights," see Pl. Opp. at 21, but plaintiffs' complaint does not allege any constitutional violation. See Compl. at ¶ 3 (seeking a determination of "what fundamental rights, if any, [plaintiffs] may have under United States laws.") (emphasis added). For this claim to arise under the Constitution, plaintiffs must allege a constitutional violation. Cf. Association of Nat'l Advertisers v. FTC, 627 F.2d 1151, 1157 (D.C.Cir.1979), cert. denied, 447 U.S. 921 (1980) ("[o]nce a plaintiff has alleged a nonfrivolous constitutional claim, the district court has jurisdiction under section 1331") (emphasis added). Plaintiffs have not brought such a claim. See Compl. at ¶ 3.

Plaintiffs have also not brought this claim under the SFPT. Instead, this action is brought

under the General MacArthur's General Order. See Defs. Mem. at 16-18. Plaintiffs argue that the reference to the General Order in the complaint was to "clarif[y] the background and enable[] the Court to interpret the SFPT." See Pl. Opp. at 21. However, plaintiffs mischaracterize their own complaint. In their complaint, plaintiffs do not allege that any rights were created by the SFPT but rather allege that "no state received any right, title, or claim to Taiwan (Formosa) under the [Treaty] according to its terms." See Compl. at ¶ 33. In fact, they claim that the SFPT was silent about the relationship that MacArthur's Order allegedly created between the United States and Taiwan. See Compl. at ¶¶ 3, 46, 47 (claiming that neither the SFPT nor any other legal instrument altered the relationship created by MacArthur's Order). Without any claim that any rights were created by the Treaty, plaintiffs cannot now allege that their complaint, which seeks a declaration of rights, arises under the Treaty.

Accordingly, plaintiffs have failed to identify a basis for federal question jurisdiction.

### 4. The United States has Not Waived Sovereign Immunity

Plaintiffs have implicitly acknowledged that their complaint does not identify any waiver by the United States of its sovereign immunity. In their opposition, plaintiffs only identify the APA and the INA, two statutes not even cited in their complaint, as the basis for the waiver of sovereign immunity. See Pl. Opp. at 22-23. However, as explained above, plaintiffs have not brought an action under either statute. See, supra, at 9-10. Accordingly, plaintiffs have failed to identify any waiver of sovereign immunity by the United States and, therefore, plaintiffs' complaint should be dismissed. See Defs. Mem. at 18-19.

### III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As defendant explained in its opening brief, a "complaint fails to state claim upon which relief may be granted if there is no private cause of action authorized by Congress." See Defs. Mem. at 19-20 (citation and internal quotation marks omitted). Plaintiffs have brought no such cause of action. They now claim that they have brought this action under the INA, the APA, and the SFPT. As explained above, however, plaintiffs have not brought a claim under the APA or the INA and, indeed, these statutes are not even cited in their complaint. See. supra, at 9-10. Plaintiffs have also not alleged in their complaint that they are entitled to any relief because of the SFPT; instead, they just assert in their complaint that the Treaty did not alter the relationship between the United States and Taiwan. See Compl. at ¶¶ 3, 46, 47 (claiming that neither the SFPT nor any other legal instrument altered the relationship created by MacArthur's Order).

Even if plaintiffs had brought a claim under the SFPT, the treaty does not create any private cause of action and, therefore, plaintiffs have not asserted a claim upon which relief may be granted. Plaintiffs argue that Articles 2(b) and 23(a) of the SFPT are self-executing and that self-executing treaties create individual rights. See Pl. Opp. at 26-29. As an initial matter, however, just because a treaty creates individual rights does not mean it creates private causes of action. "Whether a treaty is self-executing is a question distinct from whether the treaty creates private rights or remedies." See Restatement (Third) of Foreign Relations Law § 111 comment h (1987); see also Johnson v Quander, 370 F.Supp.2d 79, 100-101 (D.D.C. 2005) ("[i]t is well-established in this Circuit that in order for a party to assert a claim under a treaty, the treaty (or clauses therein) must confer such a right. 'Whether a treaty clause does create such enforcement rights is often described as part of the larger question of whether that clause [or treaty] is 'self-

executing.'") (quoting Comm. of United States Citizens Living in Nicaragua v. Reagan, 859 F.2d 929, 937 (D.C.Cir.1988)).  Nevertheless, the relevant provisions in the SFPT do not support the proposition that the Treaty is self-executing or that it creates a private cause of action.  See Pl. Opp. 26-27 (arguing that Articles 2(b) and 23(a) are self-executing).

Contrary to plaintiffs' assertions, see Pl. Opp. at 26-28, Articles 2(b) and 23(a) of the SFPT manifest an intention by the parties that these provisions shall not become effective as domestic law.  See Restatement (Third) of Foreign Relations Law § 111(4)(a) (stating that a treaty is deemed non-self-executing "if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation").  It is clear from the language of those provisions that the parties intended for them to only apply as a matter of relations between foreign nations, as opposed to conferring rights on individuals.  See Diggs v. Richardson, 555 F.2d 848, 851 (D.C. Cir. 1976) ("[i]n determining whether a treaty is self-executing courts look to the intent of the parties as manifested by the language of the instrument.").  Therefore, those provisions "deal with the conduct of [] foreign relations, an area traditionally left to executive discretion."  See id. (finding a United Nations Security Council resolution non-self-executing); see also Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 809 (Bork, J.) (concurring) (stating that Articles 1 and 2 of the United Nations charter is not self-executing because "[t]hey do not speak in terms of individual rights but impose obligations on nations and the United Nations itself").  Article 2(b) states in full that "Japan renounces all right, title and claim to Formosa [Taiwan] and the Pescadores."  See SFPT, article 2(b).  Clearly, this provision deals with the conduct of foreign relations.  Similarly, Article 23(a) does not confer rights upon individuals but rather instructs that the "Treaty shall come into force for each State

which subsequently ratifies it." See SFPT, article 23(a) (emphasis added).  The terms of the Treaty, therefore, indicate that it is not self-executing.  See Diggs, 555 F.2d at 851 (holding that a United Nations Security Council resolution was not self-executing, in part, because, it involved a matter that "is essentially the kind of standard that is rooted in diplomacy").

The SFPT also does not create any private cause of action.  A treaty "is primarily a compact between independent nations," Head Money Cases, 112 U.S. 580, 597 (1884), and absent a clear contrary intent, a treaty "depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it."  Id.; see also Whitney v. Robertson, 124 U.S. 190, 194-195 (1888); Committee of United States Citizens Living in Nicaragua v. Reagan, 859 F.2d at 937.  If a treaty is violated, this "becomes the subject of international negotiations and reclamation," not the subject of a lawsuit.  Head Money Cases, 112 U.S. at 597 ("It is obvious that with all this the judicial courts have nothing to do and can give no redress.").

The language of Article 2(b) and Article 23(a) demonstrate that signatories of the parties did not intend to create a private cause of action.  See Diggs, 555 F.2d at 851 (the provisions "do not by their terms confer rights upon individual citizens; they call upon governments to take certain action").  Again, those provisions of the SFPT plainly deal with the relations between foreign nations as opposed to whether individuals had privately enforceable rights.  The Treaty was a resolution of the war between the Allied Powers and Japan, a matter that is quintessentially an issue of foreign relations.  See SFPT ("the Allied Powers and Japan are resolved that henceforth their relations shall be those of nations which, as sovereign equals,

cooperate in friendly association").[7]  Accordingly, this action should be dismissed for failing to identify a private cause of action.

---

[7]None of the cases cited by plaintiffs stand for the proposition that any of the clauses of the SFPT are either self-executing or create private causes of action. See Pl. Opp. at 29-31. The court United States v. Shiroma, 123 F. Supp. 145 (D. Haw.) did not conclude that any rights were conferred by the SFPT upon any individual.  In fact, the court concluded that under Article 3 of the Treaty, "the defendant is not a national of the United States." Id. at 149.  Similarly, the court in Hair v. United States, 52 Fed. Cl. 279 (2002) aff'd, 359 F.3d 1253 (Fed. Cir. 2003) did not find that rights were conferred on any individual or that the individual had a private cause of action.  The court dismissed the action on the grounds that the plaintiffs did not bring the claim within the statute of limitations.  See id.  In fact, as plaintiffs acknowledge, the court in Mitsubishi Materials Crop. v. Superior Court of Orange County, 113 Fal. App. 4th 55, 75 (2003) held that the Article 26 of the Treaty "creates no private rights" because "[i]individual American citizens are not parties to the treaty, only the United States is." See Pl. Opp. at 29 n.21; see also Deutsch v. Turner Corp., 324 F.3d 692, 714 n.12 (9th Cir. 2003) (agreeing with the district court's finding that "Article 26 confers rights only on the 'parties' to the treaties, not on the individuals").  Similarly, individuals are not parties to the provisions of the Treaty in which Japan cedes control of Taiwan or the one that enforces the Treaty among the States that are parties to the Treaty.  See SFPT, articles 2(b) and 23(a).

## CONCLUSION

For the reasons stated above and its memorandum in support of its motion to dismiss, defendant respectfully requests this Court to grant its motion to dismiss.


Dated: March 8, 2007

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney for the District of Columbia

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

Of Counsel
James G. Hergen (D.C. Bar #116382)
Assistant Legal Adviser for
East and South Asian Affairs
Office of the Legal Adviser
U.S. Department of State
Washington, D.C. 20520

_/s/_____
ADAM D. KIRSCHNER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044
Delivery Address
20 Massachusetts Ave., NW., Room 7126
Washington, DC 20001
Telephone: (202) 353-9265
Fax: (202) 616-8470
Adam.Kirschner@usdoj.gov

COUNSEL FOR DEFENDANT