UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DR. ROGER C. S. LIN )
No. 19 Beiping 2nd Street, Gaoxiong City, )
Taiwan, )
)
CHIEN-MING HUANG )
9th Floor, No. 15-8, Nanjing East Road, )
Sec. 5, Taipei City, Taiwan, )
)
CHOU CHANG )
2nd Floor, No. 7, Lane 55, Shenxi Road, )
Keelung City, Taiwan, )
)
CHING-YAO HOU )
2nd Floor, No. 13, Lising Road, Sec. 2, )
Taipei County, Taiwan, )
)
CHEN-HUA LIU )                     Civil Action No. 06-1825
10th Floor, No. 15, Min Ho Street, )               Judge Rosemary M. Collyer
Taipei City, Taiwan, )
)
CHEN-NI WU )
2nd Floor, No. 13, Lising Road, Sec. 2, )
Taipei County, Taiwan, )
)
YANG-LUNG YANG )
No.10, Alley 1, Lane 296, Yanji Street, )
Taipei County, Taiwan, )
)
YAO-JHIH YE )
No. 34, Fongsing, Dapi Township, )
Yunlin County, Taiwan, )
)
CHING-WEN YEN )
3rd Floor, No. 21, Lane 31, Yijia Street, )
Taiping City, Taiwan, )
)
A-CHU YUCHIANG )
4th Floor, No. 61, Shihjian Street, )
Taipei City, Taiwan, and )
)

THE TAIWAN NATION PARTY )
9th Floor, No. 15-8, Nanjing East Road, )
Sec. 5, Taipei, Taiwan, )
  )
     Plaintiffs, )
  )
     v. )
  )
UNITED STATES OF AMERICA, )
  )
     Defendant. )
  )

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Pursuant to Federal Rule of Civil Procedure 15(a) and with the written consent of Defendant United States of America ("Defendant"), Plaintiffs Dr. Roger C. S. Lin, Chien-Ming Huang, Chou Chang, Ching-Yao Hou, Chen-Hua Liu, Chen-Ni Wu, Yang-Lung Yang, Yao-Jhih Ye, Ching-Wen Yen, A-Chu YuChiang, and the Taiwan Nation Party on behalf of its more than 1,000 of members ("Plaintiffs") hereby file this Amended Complaint for Declaratory Judgment and allege as follows:

## I.

## PRELIMINARY STATEMENT

1.    Following World War II and Japan's surrender, the Allied Powers[1] signed the Treaty of Peace with Japan on September 8, 1951, in San Francisco, California (the "SFPT").[2]

---

[1]    The "Allied Powers" are defined as "Australia, Canada, Ceylon, France, Indonesia, the Kingdom of the Netherlands, New Zealand, Pakistan, the Republic of the Philippines, the United Kingdom of Great Britain and Northern Ireland, and the United States of America" in Article 23(a) of the Treaty of Peace with Japan (*see* n.2 *infra*).

[2]    Treaty of Peace with Japan, Sept. 8, 1951, Allied Powers-Japan, 136 U.N.T.S. 46 (ratification advised by Senate, Mar. 20, 1952; ratified by President, Apr. 15, 1952; ratification deposited at Washington, Apr. 28, 1952; proclaimed by President Apr. 28, 1952; entered into force Apr. 28, 1952) (hereinafter "SFPT").

The SFPT entered into force on April 28, 1952, and it remains in force as of the filing of this Complaint.[3]

2.    Prior to the SFPT, Japan had sovereignty over Taiwan.  In Article 2(b) of the SFPT, however, Japan renounced "all right, title and claim to Formosa[4] and the Pescadores."[5] Neither the SFPT nor any other subsequent legal instrument transferred sovereignty over Taiwan to any state or changed the legal status of Taiwan.

3.    Article 23(a) of the SFPT designated the United States as "the principal occupying Power" for the purpose of the territories covered by the SFPT.[6]

4.    The Allied Powers led by the United States entrusted the Republic of China ("ROC") with authority to accept the surrender of the Japanese troops and to occupy Taiwan on behalf of the Allied Powers, according to General Order No. 1 issued by General Douglas MacArthur, Supreme Commander for the Allied Powers.[7]  Neither the SFPT nor or any other subsequent legal instrument altered the agency relationship between the principal, the Allied Powers led by the United States, and the agent, the ROC, for the purpose of Taiwan's occupation.

---

[3]    Treaties in Force 2006, at 495, *available at* http://www.state.gov/documents/organization/65540.pdf.

[4]    Today, Formosa is known as Taiwan.

[5]    SFPT, art. 2(b).

[6]    SFPT, art. 23(a).

[7]    Supreme Commander for the Allied Powers General Order No. 1, Sept. 2, 1945, J.C.S. 1467/2; *see also* Dep't of St. Bull., Feb. 1955, at 329; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 35, n.158 (2004); Lung-chu Chen and W. M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 611, 639 (1972).

5.     The international community, including the United Nations and the United States, does not recognize Taiwan as a state.

6.     Following the SFPT, Plaintiffs, all of whom reside in Taiwan, suffer as a result of being in a legal limbo, deprived of an internationally recognized citizenship and nationality.

7.     Plaintiffs seek a declaration that they have fundamental rights under the United States Constitution and laws.  In particular, Plaintiffs seek a declaration that they have rights and privileges as United States nationals (as opposed to citizens).

## II.

## PARTIES

8.     Plaintiff Dr. Roger C. S. Lin is a spokesperson and member of the Taiwan Nation Party, whose address is No. 19 Beiping 2nd Street, Gaoxiong City, Taiwan.

9.     Plaintiff Chien-Ming Huang is a chairman and member of the Taiwan Nation Party, whose address is 9th Floor, No. 15-8, Nanjing East Road, Sec. 5, Taipei City, Taiwan.

10.     Plaintiff Chou Chang is a member of the Taiwan Nation Party, whose address is 2nd Floor, No. 7, Lane 55, Shenxi Road, Keelung City, Taiwan.

11.     Plaintiff Ching-Yao Hou is a member of the Taiwan Nation Party, whose address is 2nd Floor, No. 13, Lising Road, Sec. 2, Taipei County, Taiwan.

12.     Plaintiff Chen-Hua Liu is a member of the Taiwan Nation Party, whose address is 10th Floor, No. 15, Min Ho Street, Taipei City, Taiwan.

13.     Plaintiff Chen-Ni Wu is a member of the Taiwan Nation Party, whose address is 2nd Floor, No. 13, Lising Road, Sec. 2, Taipei County, Taiwan.

14.     Plaintiff Yang-Lung Yang is a member of the Taiwan Nation Party, whose address is No.10, Alley 1, Lane 296, Yanji Street, Taipei County, Taiwan.

15.     Plaintiff Yao-Jhih Ye is a member of the Taiwan Nation Party, whose address is No. 34, Fongsing, Dapi Township, Yunlin County, Taiwan.

16.     Plaintiff Ching-Wen Yen is a member of the Taiwan Nation Party, whose address is 3rd Floor, No. 21, Lane 31, Yijia Street, Taiping City, Taiwan.

17.     Plaintiff A-Chu YuChiang is a member of the Taiwan Nation Party, whose address is 4th Floor, No. 61, Shihjian Street, Taipei City, Taiwan.

18.     Plaintiff the Taiwan Nation Party, acting on behalf of approximately 1,000 of its other members, has its address at 9th Floor, No. 15-8, Nanjing East Road, Sec. 5, Taipei, Taiwan.  The Declaratory Judgment sought in this action relates to the purposes for which the Taiwan Nation Party was founded.  Participation of all of the unnamed individual members of the Taiwan Nation Party is not necessary for the prosecution of this lawsuit.

19.     Defendant United States of America is and remains the "principal occupying Power" of Taiwan under SFPT Article 23(a).[8]

### III.

### JURISDICTION AND VENUE

20.     This Court has Federal Question jurisdiction pursuant to 28 U.S.C. § 1331.

21.     This Court has jurisdiction pursuant to the Administrative Procedure Act ("APA") §§ 702 and 704, 5 U.S.C. §§ 702 and 704.

22.     This Court has jurisdiction as to the individual Plaintiffs pursuant to the Immigration and Nationality Act ("INA") § 360, 8 U.S.C. § 1503.

23.     This Court is authorized to award declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

---

[8]     SFPT, art. 23(a).

24.    Venue is proper in this district under 28 U.S.C. § 1391, as well as 5 U.S.C. § 703.

IV.

## HISTORICAL BACKGROUND

25.    In the late XVII century, Taiwan (Formosa) was a part of the Chinese Empire.[9] The Chinese government exercised sovereignty over Taiwan and held title to its territory.

### Treaty of Shimonoseki

26.    In 1894, Japan and China engaged in the Sino-Japanese War in which Japan defeated China.

27.    Following the Sino-Japanese War, the governments of China and Japan signed a peace treaty known as the Treaty of Shimonoseki on April 17, 1895. The Treaty of Shimonoseki entered into force on May 8, 1895.[10]

28.    Pursuant to the Treaty of Shimonoseki, China ceded Taiwan to Japan. Article 2 of the Treaty of Shimonoseki provided, "China ceded to Japan in perpetuity and full sovereignty . . . [t]he island of Formosa, together with all islands appertaining or belonging to the said island of Formosa." Following the Treaty of Shimonoseki, Japan exercised sovereignty over Taiwan and held title to its territory.

### Pacific War

29.    On December 7, 1941, the Japanese naval and air forces attacked the United States naval base at Pearl Harbor, Hawaii.

---

[9]    Taiwan became part of the Chinese Empire in 1683 following the fall of the Ming Dynasty and the establishment of the Qing Dynasty. *See, e.g.*, Jonathan I. Charney and J. R. V. Prescott, *Resolving Cross-Straight Relations between China and Taiwan*, 94 A.J.I.L. 453, 453-456 (2000).

[10]    Treaty of Peace, Apr. 17, 1895, China-Japan, 181 Consol. TS 217 (entered into force May 8, 1895).

30.     On December 8, 1941, the United States Congress issued a Declaration of War against Japan. The United States President Roosevelt signed the Declaration of War against Japan the same day. The Pacific War began.

31.     The Allied Powers defeated Japan, and it surrendered on September 2, 1945. The Japanese representatives signed the Instrument of Surrender aboard the battleship USS Missouri anchored with other United States and British ships in Tokyo Bay.

32.     Shortly after the signing of the Instrument of Surrender, General Douglas MacArthur, Supreme Commander for the Allied Powers, issued General Order No. 1 ordering the "senior Japanese commanders and all ground, sea, air and auxiliary forces within . . . Formosa" to "surrender to Generalissimo Chiang Kai-shek."[11] Pursuant to the General Order No. 1, Chiang Kai-shek, a military and political leader of the ROC, was a "representative of the Allied Powers empowered to accept surrender[]" of the Japanese forces, himself or through a representative.[12]

33.     On October 25, 1945, Chiang Kai-shek's representative in Taipei, Taiwan, accepted the surrender of the Japanese forces there.

34.     The surrender and repatriation of the Japanese forces in Taiwan was carried out with substantial assistance of the United States armed forces.

---

[11]     Supreme Commander for the Allied Powers General Order No. 1, Sept. 2, 1945, J.C.S. 1467/2.

[12]     *Id.*

35.    Following the surrender and pending a peace settlement, Taiwan remained *de jure* Japanese territory.  General Douglas MacArthur stated at a congressional hearing in May 1951, "legalistically Formosa is still a part of the Empire of Japan."[13]

36.    The Allied Powers led by the United States, the principal occupying Power, authorized Chiang Kai-shek's ROC government to accept the surrender of the Japanese forces in Taiwan and to undertake the post-surrender occupation of Taiwan on behalf of the Allied Powers.[14]  The ROC government occupied Taiwan on behalf of the Allied Powers (led by the United States) pending a peace treaty with Japan, which would change the legal status of Taiwan.

### San Francisco Peace Treaty

37.    On September 8, 1951, the Allied Powers and Japan signed the SFPT.  The SFPT entered into force on April 28, 1952, and it remains in force as of the filing of this Complaint.[15]

38.    Pursuant to the SFPT, Japan renounced its sovereignty over Taiwan and title to its territory.  Article 2(b) of the SFPT provided, "Japan renounces all right, title and claim to Formosa and the Pescadores."[16]

---

[13]    *See* Statement by General Douglas MacArthur, N.Y. Times, May 5, 1951, at A7; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 16, n.72 (2004).

[14]    Lung-chu Chen and W. M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 611 (1972).

[15]    Treaties in Force 2006, at 495, *available at* http://www.state.gov/documents/organization/65540.pdf.

[16]    SFPT, art. 2(b).

39.    The SFPT did not designate the recipient of the "right, title and claim to Formosa and the Pescadores." Thus, no state received any right, title, or claim to Taiwan under the SFPT according to its terms.[17]

40.    Japan and the Allied Powers—"Australia, Canada, Ceylon, France, Indonesia, the Kingdom of the Netherlands, New Zealand, Pakistan, the Republic of the Philippines, the United Kingdom of Great Britain and Northern Ireland, and the United States of America"—were the original parties to the SFPT as set forth in Article 23(a).[18] Currently, 46 countries are parties to the SFPT, but China is not one of them.[19]

41.    China never became a party to the SFPT. Neither the ROC government, which occupied the island of Taiwan as agent for the "principal occupying Power,"[20] nor the government of the People's Republic of China ("PRC"), which controlled mainland China, signed, ratified, or adhered to the SFPT.

42.    Article 25 of the SFPT specifically provided that the Treaty did "not confer any rights, titles or benefits on any State which [was] not an Allied Power [as defined in Article 23(a),]" subject to certain narrow exceptions set forth in Article 21.[21] Accordingly, China, a non-party, did not receive "any right, titles or benefits" under the SFPT except as specifically provided in Article 21.

---

[17]    See Lung-chu Chen and W. M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 642 (1972).

[18]    SFPT, art. 23(a).

[19]    See Treaties in Force 2006, at 495, *available at* http://www.state.gov/documents/organization/65540.pdf.

[20]    See SFPT, art. 23(a) ("the United States" is "the principal occupying Power").

[21]    SFPT, art. 25.

43.    According to Article 21, China, a non-party, was entitled only to two benefits: one under Article 10(a),[22] which abrogated the Peking Protocol previously signed by China and Japan; and another under Article 14(a)(2),[23] which enabled China to seize the Japanese property within China's jurisdiction at the time of the SFPT's entry into force.  China did not receive any other benefits under the SFPT according to its terms.

44.    Specifically, China, a non-party, was not entitled to any benefits under Article 2(b) dealing with the territory of Taiwan.[24]  The parties to the SFPT chose not to give any "right, title [or] claim to Formosa and the Pescadores" to China.

45.    When the Allied Powers signed the SFPT on September 8, 1951, they did not intend to give any "right, title [or] claim to Formosa and the Pescadores" to China.  Prior drafts of Article 2(b) show that the Allied Powers originally intended to give China sovereignty over Taiwan, but later affirmatively changed their intention.  The drafts dated August 5, 1947, and January 8, 1948, provided: "Japan hereby cedes to China in full sovereignty the island of Taiwan and adjacent minor islands[.]"[25]  By contrast, the final draft of the SFPT did not transfer "full sovereignty" in Taiwan and the Pescadores Islands from Japan to China.

---

[22]    Pursuant to Article 10(a) of the SFPT, "Japan renounce[d] all special rights and interests in China, including all benefits and privileges resulting from the provisions of the final Protocol signed at Peking on September 7, 1901 . . . , and agrees to the abrogation in respect to Japan of the said protocol . . . ."  SFPT, art. 10(a).

[23]    Pursuant to Articles 14(a)(2) and 21 of the SFPT, China had "the right to seize, retain, liquidate or otherwise dispose of all property, rights and interests of (a) Japan and Japanese nationals, (b) persons acting for or on behalf of Japan or Japanese nationals, and (c) entities owned or controlled by Japan or Japanese nationals, which on the first coming into force of the present Treaty were subject to its jurisdiction."  Some limitations applied.  SFPT, art. 14(a)(2).

[24]    SFPT, arts. 21, 25.

[25]    Memorandum from Hugh Borton to Charles E. Bohlen: Draft Treaty of Peace for Japan, State Dep't Decimal File No. 740.0011 PW (PEACE)/8-647 CS/W, State Dep't Records, Record Group 59 (Aug. 6, 1947); Memorandum, Background of Draft of Japanese Peace Treaty, State

46.     While Article 2(b) of the SFPT did not designate a recipient of "all right, title and claim to Formosa and the Pescadores," Article 23 of the SFPT designated the United States as the principal occupying Power" with respect to the territories covered by the SFPT, including "Formosa and the Pescadores."[26]

47.     Following the entry into force of the SFPT, the government of the ROC continued to occupy Taiwan as agent for the United States, "the principal occupying Power."

48.     The Treaty of Peace between the ROC and Japan, which was signed on April 28, 1952, and entered into force on August 5, 1952 (the "Treaty of Taipei"), did not transfer sovereignty over Taiwan from Japan to China either.[27]     Article 2 of the Treaty of Taipei merely acknowledged Article 2(b) of the SFPT, "[it] is recognized that under Article 2" of the SFPT "Japan has renounced all right, title and claim to Taiwan and Penghu (the Pescadores)."[28]     The Treaty of Taipei did not designate China as a recipient of "all right, title and claim" to Taiwan.

49.     In the aftermath of the SFPT, the governments of the leading Allies interpreted the SFPT to mean that no state acquired sovereignty over Taiwan and title to its territory.  For example, United States Secretary of State John Foster Dulles told the Senate in December 1954, "[the] technical sovereignty over Formosa and the Pescadores has never been settled.  That is

---

Dep't Decimal File No. 740.0011 PW (PEACE)/1-3048 CS/W, State Dep't Records, Record Group 59 (Jan. 30, 1948); *see also* Seokwoo Lee, *The 1951 San Francisco Peace Treaty with Japan and the Territorial Disputes in East Asia*, 11 Pac. Rim L. & Pol'y 63, 124, nn.275, 14, 15 (2002).

[26]     SFPT, art. 23.  Also, Article 4(b) of the SFPT empowered the "United States Military Government" to direct the "disposition of property of Japan and Japanese nationals" in the territories covered by the SFPT, including "Formosa and the Pescadores."  SFPT, art. 4(b).

[27]     Treaty of Peace with Japan, Apr. 28, 1952, R.O.C.-Japan, 163 U.N.T.S. 38 (entered into force Aug. 5, 1952).

[28]     *Id.*, art. 2.

Amended Complaint for Declaratory Relief – Page 11

because the Japanese peace treaty merely involves a renunciation by Japan of its right and title to

these islands.    But the future title is not determined by the Japanese peace treaty, nor is it

determined by the peace treaty which was concluded between the [ROC] and Japan."[29]

Likewise, British Foreign Secretary Anthony Eden told the British House of Commons, "under

the Peace Treaty of April, 1952, Japan formally renounced all right, title and claim to Formosa

and the Pescadores; but again this did not operate as a transfer to Chinese sovereignty, whether

to the [PRC] or to the [ROC].    Formosa and the Pescadores are therefore, in the view of Her

Majesty's Government, territory the de jure sovereignty over which is uncertain or

undermined."[30]    Similarly, in 1964, President Georges Pompidou (then premier) stated that

"Formosa (Taiwan) was detached from Japan, but it was not attached to anyone" under the

SFPT.[31]   Thus the leading allies were in consensus that China did not acquire sovereignty over

Taiwan or title to its territory pursuant to the SFPT.

    50.    The SFPT did not terminate the agency relationship between the United States,

the principal, and the ROC, the agent, with regard to the occupation and administration of

Taiwan.  In 1955, United States Secretary of State John Foster Dulles confirmed that the basis

for ROC's presence in Taiwan was that "in 1945, the [ROC] was entrusted with authority over

[Taiwan]" and "General Chiang [Kai-shek] was merely asked to administer [Taiwan] for the

---

[29]    *See* Statement by Secretary John Foster Dulles, Dep't St. Bull., Dec. 1954, at 896; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 36, n.164 (Dec. 2004); Lung-chu Chen and W.M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 644 (1972).

[30]    *See* Statement by Secretary Anthony Eden, 536 Parl. Deb., H.C., 5th ser., 1955, at 159; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 36, n.167 (2004).

[31]    *See* Statement by President Georges Pompidou, N.Y. Times, Apr. 24, 1964, at 4, col. 4; *see also* Lung-chu Chen and W.M. Reisman, *Who Owns Taiwan: A Search for International Title*, 81 Yale L.J. 599, 645 (1972).

Allied . . . [P]owers pending a final decision as to their ownership."[32]  In the words of British Prime Minister Winston Churchill, "Chiang Kai-shek . . . took refuge upon Formosa, where he still remains [in 1954]" after he "was driven out of [mainland China] by a Communist revolution."[33]

51.     Following the entry into force of the SFPT on April 28, 1952, the ROC did not exercise sovereignty over Taiwan and did not have title to its territory.

## V.

## LEGAL STATUS OF TAIWAN FOLLOWING THE SAN FRANCISCO PEACE TREATY

52.     Following the Pacific War, Taiwan has been an occupied territory of the United States, "the principal occupying Power."  Currently, Taiwan is an occupied territory of the United States, and Taiwan's statehood status is disputed and uncertain.

53.     Neither the SFPT nor the Treaty of Taipei nor any other subsequent legal instruments changed the status of Taiwan.

54.     The agency relationship between the United States, the principal, and the ROC, its agent in Taiwan, never terminated.

55.     General Douglas MacArthur's General Order No. 1 empowering the government of ROC to accept the surrender of the Japanese troops in Taiwan and to occupy Taiwan on behalf of the Allied Powers led by the United States following the Pacific War is still valid.

---

[32]     *See* Statement by Secretary John Foster Dulles, Dep't St. Bull., Feb. 1955, at 329; *see also* N.Y. Times, Feb. 7, 1955, at A1; Y. Frank Chiang, *One-China Policy and Taiwan*, 28 Fordham Int'l L.J. 1, 35, nn.158, 159 (2004).

[33]     *See* Statement by Prime Minister Winston Churchill, 530 Parl. Deb., H.C., 5th ser., 1954, at 494; *see also* Y. Frank Chiang, *One-China Policy and Taiwan*,  28 Fordham Int'l L.J. 1, 35, n.162 (2004).

56.    The United States as the principal occupying Power never issued a formal statement or declaration that the occupation of Taiwan has ended.  It never transferred the sovereignty over Taiwan or title to its territory to any other government.   The United States as the principal occupying Power is still holding the sovereignty over Taiwan and title to its territory in trust for the benefit of the Taiwanese people.

57.    Neither the SFPT (the supreme law of the land and highest ranking legal instrument defining the relationship between the United States and Taiwan), nor the Mutual Defense Treaty of 1955,[34] nor the Taiwan Relations Act of 1979 ("TRA"),[35] nor any other legal instrument affected the legal status of Taiwan, or terminated the agency relationship between the United States and the ROC for the purpose of the occupation and administration of Taiwan.

58.    The Mutual Defense Treaty, in view of the Unites States Senate's Committee on Foreign Relations, did not modify or affect the existing legal status of Taiwan.  The committee specified, "nothing in the [] treaty shall be construed as affecting or modifying the legal status or sovereignty of the territories referred to in the [treaty,]" namely Taiwan.[36]  "The committee decided that this treaty was not a competent instrument to resolve doubts about sovereignty over Formosa."[37]

59.    The TRA did not affect the legal status of Taiwan.  Indeed, the TRA indicated that "the future of Taiwan" is still not "determined."[38]

---

[34]    Mutual Defense Treaty, March 3, 1955, U.S.-ROC, 6 UST 433, TIAS No. 3178, 248 UNTS 213.

[35]    Taiwan Relations Act, 22 U.S.C. §§ 3301-3316 (2006) (hereinafter "TRA").

[36]    *See* 101 Cong. Rec. 1379, 1381 (1955).

[37]    *See* 101 Cong. Rec. 1381 (1955).

[38]    TRA § 3301.

60.     The Taiwanese people never issued a declaration of self-determination and never formed their own government.

61.     The international community does not recognize Taiwan as a state.

62.     The United Nations never recognized Taiwan as a state and has never granted Taiwan's (ROC's) application for membership.

63.     Most importantly, the United States does not recognize Taiwan as a state.[39]

64.     Pursuant to the TRA, which embodies the United States congressional policy towards Taiwan, there is an "absence of diplomatic relations and recognition with respect to Taiwan."[40]  The United States does not maintain inter-state relations with Taiwan.[41]  Instead, "the people of the United States" maintain "commercial, cultural, and other relations" with "the people of Taiwan."[42]

65.     In July 1982, the United States gave "Six Assurances" to the Taiwan authorities, including that the "United States would not alter the terms of the Taiwan Relations Act[,]" "would not alter its position about the sovereignty of Taiwan[,]" and "would not formally recognize Chinese sovereignty over Taiwan."[43]

---

[39]     Independent States in the World, U.S. Department of State Bureau of Intelligence and Research (listing Taiwan not as a state, but as "other"), *available at* http://www.state.gov/s/inr/rls/4250.htm.

[40]     TRA § 3303.

[41]     TRA §§ 3301-3316.

[42]     *Id.* § 3301.

[43]     The "Six Assurances to Taiwan," *available at* http://www.taiwandocuments.org/assurances.htm.

66.    The United States President Clinton's Executive Order No. 13014 did not affect the status of Taiwan and did not alter the "commercial, cultural, and other relations between the people of the United States and the people of Taiwan without official representation or diplomatic relations[.]"[44]

67.    On October 25, 2004, United States Secretary of State Colin Powell confirmed the United States' continuing policy towards Taiwan. He stated, "Taiwan is not independent. It does not enjoy sovereignty as a nation, and that remains our policy, our firm policy."[45]

## VI.

## LEGAL STATUS OF PLAINTIFFS

68.    Considering that the international community—including the United Nations and the United States—does not recognize Taiwan as a state, the Taiwanese people do not have an internationally recognized citizenship and nationality.

69.    Considering that the United States is holding de jure sovereignty over Taiwan, the Taiwanese people owe permanent allegiance to the United States and have the status of United States nationals (as opposed to citizens).

70.    Because of their status as United States nationals following to the SFPT, individual Plaintiffs are entitled to United States national passports, as long as they meet the statutory requirements.

71.    The American Institute in Taiwan ("AIT")[46] or its officials denied individual Plaintiffs' rights and privileges as United States nationals.

---

[44]    Executive Order No. 13014, 61 FR 42963 (August 15, 1996).

[45]    *See* Statement by Secretary Colin Powell, *available at* http://usinfo.state.gov/eap/Archive/2004/Oct/26-277540.html.

72.    The AIT is a department or independent agency of the United States.

73.    On February 21, 2006, Plaintiffs' spokesperson Roger C.S. Lin attended meetings with the AIT officials, after which he submitted evidence of Plaintiffs' United States nationality status.

74.    On March 29, 2006, individual Plaintiffs in good faith attempted to submit DS-11 passport applications to the AIT.

75.    Their passports applications (including attachments) established a substantial basis for their entitlement to passports.

76.    All individual Plaintiffs at some time prior to their applications for passports have been physically present in the United States.

77.    The AIT refused to accept and process the passport applications, without providing an explanation setting forth the reasons for the refusal.

78.    The AIT's refusal to accept and process the individual Plaintiffs' passport applications constituted a denial of their status as United States nationals, and of their rights and privileges as United States nationals.

79.    Plaintiffs' subsequent attempts to persuade the AIT to accept and process the individual Plaintiffs' passport applications proved to be futile.  The individual Plaintiffs could not even gain admission to the AIT for the purpose of resubmitting their passport applications.

80.    The AIT's agency action constituted a final administrative denial of the individual Plaintiffs' rights and privileges as United States nationals.

---

[46]    The AIT was formed pursuant to the Taiwan Relations Act and performs functions typically reserved for embassies and consulates (*e.g.*, processing passport and visa applications).

81.    The United States waived sovereign immunity from this action by specific statutory consent embodied in the INA § 360, 8 U.S.C. § 1503; and the APA § 702, 5 U.S.C. § 702.

## VII.

## RELIEF REQUESTED

Considering that this case does not present a nonjusticiable political question and instead requires treaty, statutory, and constitutional interpretation; and considering that this Court has the constitutional power and duty to interpret treaties, statutes, and the Constitution, Plaintiffs respectfully pray that this Court enter an Order declaring that:

(a)    By refusing to accept and process individual Plaintiffs' passport applications, the AIT wrongfully denied individual Plaintiffs' United States nationality status and wrongfully denied their rights and privileges as United States nationals.

(b)    Individual Plaintiffs are United States nationals and have rights and privileges as United States nationals, including those set forth below.

(c)    Plaintiffs have the Fifth Amendment right against deprivation of life, liberty, or property, without due process of law.

(d)    Plaintiffs have the Fourteenth Amendment right against deprivation of life, liberty, or property, without due process of law.

(e)    Plaintiffs may not be deprived of the Fifth Amendment right to travel, without due process of law, which requires a notice and a hearing.

(f)    Plaintiffs have the Eighth Amendment right against cruel and unusual punishment in the form of deprivation of a recognized nationality.

(g)     Plaintiffs have the Fourteenth Amendment right of equal protection of the laws.

(h)     Plaintiffs have the First Amendment right to petition the government for a redress of grievances.

Respectfully submitted,

Charles H. Camp (D.C. Bar No. 413575)
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: (202) 349-3905
Facsimile: (202) 349-3906
E-mail:  ccamp@charlescamplaw.com

**Counsel for Plaintiffs**

March 19, 2007

Amended Complaint for Declaratory Relief – Page 19

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing paper was served upon the following counsel for Defendant electronically via the Court's Electronic Case Filing system this 19th day of March 2007:

Adam D. Kirschner, Esquire
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

_____
Charles H. Camp