UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LIN, ET. AL, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 06-1825 (RMC) |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss**

No matter how plaintiffs try to characterize their arguments, they cannot cure the obvious non-justiciable political question problem of attempting to have this Court declare the United States sovereign over Taiwan. Plaintiffs claim that they are not asking this Court to decide such a question, see Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 12-13, and, yet, they base their claim on this Court accepting their bald assertion that Taiwan is a "territory subject to *de jure* sovereignty of the United States." Id. at 20. Courts are to defer to the political branches' determinations of sovereignty and the political branches have made it clear that the United States is not sovereign over Taiwan. This Court should not jeopardize the delicate balance of power in the Taiwan Strait by accepting plaintiffs' invitation to undertake a resolution of Taiwan's status. Accordingly, this Court should conclude that it lacks subject matter jurisdiction to decide the non-justiciable political question plaintiffs have presented by this action. Alternatively, this Court should conclude that plaintiffs' fail to state a claim under the Immigration and Nationality Act ("INA") because this action is based on the erroneous notion that the United States is sovereign over Taiwan.

**ARGUMENT**

I.  **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THIS ACTION PRESENTS A QUINTESSENTIAL NON-JUSTICIABLE POLITICAL QUESTION**

As defendant explained in its opening brief, this action falls within the criteria courts use in determining whether an action presents a non-justiciable political question. See Defendant's Motion to Dismiss ("Defs. Mem.") at 10 (citing Baker v. Carr, 369 U.S. 186, 217 (1962)). "To find a political question, [a court] need only conclude that one factor is present, not all." See Bancoult v. McNamara, 445 F.3d 427, 432 (D.C. Cir. 2006) (citation and quotation marks omitted).[1]

Plaintiffs' efforts to distinguish Baker and its progeny are without merit. See Baker, 369 U.S. at 217 (listing the criteria a court is to use for analyzing whether a cause of action presents a non-justiciable political question); Defs. Mem. at 10. Although plaintiffs argue that there is "no textually demonstrable commitment of the question presented by Plaintiffs to the political branches," Pl. Opp. at 9, "[p]olitical recognition [of the sovereign of a territory] is exclusively a function of the Executive." See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 410 (1964). And, while plaintiffs argue that there is "no lack of judicially discoverable and manageable standards," Pl. Opp. at 7, defendant explained in its opening brief that the entire complaint is based on an order issued by General Douglas MacArthur and it is unclear what standards this Court would use to interpret that Order and how it relates to all other relevant legal

---

[1] Although plaintiffs recast the Baker criteria into the three inquiries set forth in Justice Powell's concurrence in Goldwater v. Carter, 444 U.S. 996, 998 (1979) (Powell, J., concurring), see Pl. Opp. at 6, the criteria the Supreme Court identified in Baker remain the same. Under any analytical approach, the result does not change- this case presents a non-justiciable political question.

instruments, including the Taiwan Relations Act. See Defs. Mem. at 10-11.[2]

Despite plaintiffs' assertions to the contrary, see Pl. Opp. at 11, plaintiffs are specifically asking this Court to make an initial policy determination - resolving the status of Taiwan - in an area that is reserved to the political branches. See Baker, 369 U.S. at 217 (holding that a cause of action presents a non-justiciable political question if there is an "impossibility of deciding [the matter] without an initial policy determination of a kind clearly for nonjudicial discretion").[3]

---

[2]Plaintiffs assert that this Court should interpret MacArthur's Order based on a United States Military Court case and a Court of Claims case. See Pl. Opp. at 10 n.20. However, both cases are inapplicable. As an initial matter, neither examined the political question doctrine. Moreover, in United States v. Voorhees, 4 U.S.C.M.A. 509, 521 (1954), the Court examined the legality of a military regulation, in the context of a court-martial, rather than the scope of a general policy pronouncement. See id. ("[w]e must interpret the regulation reasonably and realistically"). In Vicotrio v. United States, 106 F.Supp. 182 (Ct. Cl. 1952) (overruled in Longronio v. United States, 133 F.Supp. 395 (Ct. Cl. 1955), the Court considered the scope of a statute rather than the scope of an order. See id. (examining statutory law that defined the United States' relations with the Philippines to determine whether members of the Philippine army were considered part of the United States army after they were ordered into the armed services of the United States). In contrast to a legal interpretation of a statute or regulation, the question plaintiffs present to this Court concerns the scope of a military order made by the Allied Powers directing how a defeated enemy force should surrender in the field. See Pl. Am. Compl. at ¶¶ 32, 52, 54 (claiming that MacArthur's Order created an agency relationship between the United States and Chiang Kai-shek in which Taiwan became an occupied territory of the United States because the Order directed the Japanese forces to surrender to Chian Kai-shek). There are no judicially discoverable standards available for how a court is to interpret the relationship between allied forces in conjunction with the policy judgment made in directing an enemy power to surrender. See Schneider v. Kissinger, 412 F.3d 190, 197 (D.C. Cir. 2005) (finding that there are "no justiciably discoverable and manageable standards" to resolve a claim in which a "court would have to define the standard for the government's use of covert operations in conjunction with political turmoil in another country").

[3]Besides asking this Court to make a policy decision about the status of Taiwan, plaintiffs have also inappropriately asked this Court to interpret a treaty between the Republic of China and Japan to determine Taiwan's status. See Pl. Am. Compl. at ¶ 48. Plaintiffs attempt to argue that Hwang Geum Joo v. Japan, 413 F.3d 45, 51-53 (D.C. Cir. 2005) is inapplicable because a First Circuit case and a 1959 D.C. District Court case reached a different conclusion as to whether a court may interpret treaties or international agreements to which the United States is not a party. See Pl. Opp. at 10 n.19. But Joo stated that it "would be inimical to the foreign policy interests of the United States" for "a court in the United States to decide whether Korea's

Indeed, plaintiffs have conceded that in order to establish their claim that they are United States nationals, the Court would necessarily have to accept their contention that Taiwan is subject to United States sovereignty. See Plaintiffs' Amended Complaint ("Pl. Am. Compl.") at ¶ 69 ("[c]onsidering that the United States is holding de jure sovereignty over Taiwan, the Taiwanese people owe permanent allegiance to the United States and have the status of United States nationals (as opposed to citizens)"); see also Pl. Opp. at 20 (incorrectly asserting that they meet the terms of the INA because the United States allegedly exercises sovereignty over Taiwan). However, the political branches have made clear that plaintiffs' contention is erroneous. See, infra, at 5-8. Therefore, plaintiffs' attempt to characterize their complaint as not raising the question of who exercises sovereignty over Taiwan, see Pl. Opp. at 12, should be rejected.

Plaintiffs are unable to overcome well-established precedent holding that the determination of who has sovereignty of a territory is non-justiciable. See Jones v. United States, 137 U.S. 202, 212 (1890); Boumediene v. Bush, 476 F.3d 981, 992 (D.C. Cir. 2007), cert. denied, 127 S.Ct. 1478 (2007). In an unsuccessful attempt to overcome this controlling precedent, plaintiffs cite Ungar v. Palestine Liberation Organization, 402 F.3d 274 (1st Cir. 2005) and Rasul v. Bush, 542 U.S. 466 (2004) for the proposition that a Court could examine the status

---

or Japan's reading of the treaty between them is correct, when the Executive has determined that choosing between the interests of two foreign states in order to adjudicate a private claim against one of them would adversely affect the foreign relations of the United States." Joo, 413 F.3d at 53. Similarly, in this case, it would be inimical to the foreign policy interests of the United States for a Court to decide plaintiffs' interests by interpreting an agreement between the Republic of China and Japan that would decide the status of Taiwan. The United States has a strong foreign policy interest in maintaining a certain balance in the Taiwan Strait that is not undermined by a Court making a policy determination about the status of Taiwan on the basis of an international agreement to which the United States is not even a party. Cf. Mingtai Fire & Marine Ins. Co. v. United Parcel Service, 177 F.3d 1142, 1147 (9th Cir. 1999) (specifying that it was "not independently determin[ing] the status of Taiwan").

of a territory. See Pl. Opp. at 16-17. Both are inapposite because neither case involved the judiciary making an official United States policy determination regarding the status of the area in question. See Ungar, 402 F.3d at 280 (involving a matter of statutory interpretation in which the Court explicitly stated that the lower court's interpretation of the Antiterrorism Act "neither signaled an official position on behalf of the United States with respect to the political recognition of Palestine nor amounted to the usurpation of a power committed to some other branch of government"); Rasul, 542 U.S. at 480-81 (relying on "the express terms of [United States] agreements with Cuba," which were made by the Executive Branch, that defined the scope of the United States' relationship with Guantanamo Bay Naval Base). Here, plaintiffs are asking this Court to make a policy determination based on their contention that the United States is sovereign over Taiwan.

In this case, plaintiffs are not just asking this Court to make a policy determination left to the political branches but, in fact, to improperly contradict a prior policy determination. See Baker, 369 U.S. at 217 (holding that a cause of action presents a non-justiciable political questions if there is an "impossibility of a court's undertaking independent resolution [of this issue] without expressing lack of respect due coordinate branches of government"). Indeed, the cases on which plaintiffs rely support the notion that the judiciary follows the executive's determinations of sovereignty.[4] See Pl. Opp. at 11-16; see also Baker, 369 U.S. at 212 (the

---

[4] E.g., Wang v. Masaitis, 416 F.3d 992, 995 (9th Cir. 2005) ("China's sovereignty over Hong Kong (and by corollary Hong Kong's subsovereign status has been resolved by the executive branch, and we do not question that judgment") (emphasis added); Cheng Fu Sheng v. Rogers, 177 F.Supp. 281 (D.D.C. 1959) (court was "guided by the attitude of the Department of State on the question whether [Taiwan] is to be regarded as part of China") (emphasis added) (rev'd on other grounds in Rogers v. Cheng Fu Sheng, 280 F.2d 663 (D.C. Cir. 1960)); United States v. Shiroma, 123 F.Supp. 145, 149 (D. Haw. 1954) (stating that "[t]he reasonable construction of treaty terms by the State Department, acquiesced in by the other signatory

"judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory"). Here, as defendant explained in its opening brief, the political branches have made it clear that the United States does not exercise sovereignty over Taiwan. See Defs. Mem. at 3-6 (explaining that the United States has entered in a series of communiques with the People's Republic of China concerning Taiwan in addition to the Executive Orders and the Taiwan Relations Act that defines the United States' relations with Taiwan); id. at 9-10 (citing Executive Order No. 13014 (August 15, 1996), 61 Fed. Reg. 13014 and Taiwan Relations Act of 1979, 22 U.S.C. § 3301(b)(3) for the proposition that the political branches have defined the United States relations with Taiwan and that the relationship does not include the United States exercising sovereignty over Taiwan). For this Court to hold that plaintiffs are nationals of the United States, this Court would have to first reach a decision that is directly contrary to the one made by the political branches - with all of the potentially adverse foreign policy and national security consequences that such a decision inevitably would entail.

The San Francisco Peace Treaty of 1951 ("SFPT") does not support a contrary conclusion. Plaintiffs do not point to any language in the SFPT, on which they now claim to rely, in which Taiwan was ceded to the United States. See Pl. Opp. at 2 (claiming that "no other legal instrument has ever changed Taiwan's status *vis-a-vis* the United States"). In fact, plaintiffs admit that although "Japan renounced *de jure* sovereignty over Taiwan" in the SFPT, the Treaty did not vest sovereignty of Taiwan in any state. Id. Unlike the Treaty of Paris

---

powers, is entitled to great weight" and, therefore, the court relied on an opinion letter from the State Department to find that defendant was not a national of the United States) (emphasis added); Vermilya-Brown Co. v. Connell, 335 U.S. 377, 380-81 (1948) ("[i]n the light of the statement of the Department of State, we predicate our views on the issue presented upon the postulate that the leased area is under the sovereignty of Great Britain and that it is not territory of the United States in a political sense, that is, a part of its national domain") (emphasis added).

following the Spanish- American War, which plaintiffs admit expressly ceded Puerto Rico and the Phillippines to the United States, see Pl. Opp. at 12 n.22, the SFPT did not vest sovereignty of Taiwan in the United States.[5]  The Executive, through the relevant Executive Orders, and in conjunction with Congress, through the Taiwan Relations Act of 1979, 22 U.S.C. § 3301, et seq., has made it clear that Taiwan was never ceded to the United States.  See Defs. Mem. at 3-6, 9-10.  Furthermore, it was United States policy prior to 1979 that Taiwan was part of the Republic of China.  see 22 U.S.C. § 3303(c) (approving the continuing of international agreements "entered into by the Untied States and the governing authorities on Taiwan recognized by the United States as the Republic of China prior to January 1, 1979").[6]  Courts are to "give great weight to an interpretation made by the Executive Branch" regarding international agreements.  See Restatement (Third) of Foreign Relations Law of the United States § 326(2) (1987); see also Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 184-85 (1982); Iceland S.S. Co., Ltd.-

---

[5] Therefore, the "Insular Cases" following the Spanish-American War on which plaintiffs rely are inapposite.  See Pl. Opp. at 12-13 n.22; see also, e.g., Balzac v. Porto Rico, 258 U.S. 298 (1922); Dorr v. United States, 195 U.S. 138 (1904).  In those cases, the status of each territory was politically determined and the courts were considering what resulted from that status.  See Baker, 369 U.S. at 212 ("once sovereignty over an area is politically determined and declared, courts may examine the resulting status and decide independently whether a statute applies to that area") (emphasis added) (footnotes omitted).

[6] Plaintiffs argue that the United States Senate's Committee on Foreign Relations expressed the view that the 1954 Mutual Defense Treaty did not "affect[] or modify[] the legal status or sovereignty of the territories referred to in the [treaty]," including Taiwan.  See Pl. Opp. at 2 (citing 101 Cong. Rec. 1381).  But plaintiffs ignore the fact that the Mutual Defense Treaty specified that the Republic of China included the territory of Taiwan and that the United States entered into a series of other international agreements with the Republic of China prior to 1979.  See Def. Mem. at 3-4 (citing Mutual Defense Treaty, Article VI, Treaties and International Acts Series 3178 (1955) and Treaties in Force (2006) at 361, 362).  In fact, Secretary of State John Foster Dulles described the discussions between the United States and the Republic of China regarding the Mutual Defense Treaty as "conversations between representatives of our two Governments."  See 101 Cong. Rec. 1380.

Eimskip v. U.S. Dept. of Army, 201 F.3d 451, 458 (D.C. Cir. 2000) cert. denied, 529 U.S. 1112 (2000).

      Finally, in their opposition brief, plaintiffs ignore the fact there is an "unusual need for unquestioning adherence to a political decision already made," see Baker, 369 U.S. at 217, because of the geopolitical implications of the issues surrounding the Taiwan Strait. As defendant explained in its opening brief, the Executive and Congress have charted a particular path in the United States' relationship with Taiwan and the People's Republic of China and the potential fallout from judicial interference in these relationships could have far ranging consequences. See Defs. Mem. at 3-6, 10. For the judiciary to question that particular path could well upset the balance of power in the Taiwan Strait and destabilize U.S.-Taiwan-China relations. For the same reason, it is vital that the United States speaks with one voice on this sensitive and potentially explosive policy issue. See Baker, 369 U.S. at 217 (stressing that in determining whether a cause of action presents a non-justiciable political question, a court should decide whether there is the "potentiality of embarrassment from multifarious pronouncements by various departments on one question"); see also Crosby v. National Foreign Trade Council 530 U.S. 363, 381 (differences in state law and federal law "compromise the very capacity of the President to speak for the Nation with one voice in dealing with other governments"). Accordingly, plaintiffs' action raises a non-justiciable political question.

**II.     Plaintiffs Have Failed to State a Claim under the Immigration and Nationality Act[7]**

Even assuming that this action does not present a political question, plaintiffs fail to state a claim under the INA because plaintiffs are not nationals of the United States. Plaintiffs assert that their "nationality claim is not based on any action manifesting permanent allegiance to the United States," see Pl. Opp. at 20, but rather is "based on birth in the territory subject to *de jure* sovereignty of the United States." See Pl. Opp. at 20-21. Therefore, the entire basis for plaintiffs' claim to nationality status, by their own admission, hinges on whether Taiwan is subject to *de jure* sovereignty of the United States. As defendant has made clear above, the United States does not exercise sovereignty over Taiwan, a determination made by the political branches to which the judiciary defers. See Baker, 369 U.S. at 212. To the extent that this Court were to find that the political branches have not made it clear that the United States is not sovereign over Taiwan, the determination of who is sovereign of a territory would still be non-justiciable. See Jones v. United States, 137 U.S. at 212; Boumediene v. Bush, 476 F.3d at 992.

In any event, plaintiffs fail to demonstrate that they meet the terms of the INA even when relying on the fallacy that the United States is sovereign over Taiwan. Acknowledging that they

---

[7]Plaintiffs state that defendant has "only moved to dismiss Plaintiffs' claim based on the INA § 360, 8 U.S.c. § 1503, and did not challenge the bases for Plaintiffs' other claims." See Pl. Opp. at 19. However, defendant stated in its opening brief that it construed plaintiffs' complaint as seeking "a declaration that the individuals are United States nationals," see Def. Mem. at 3, but that if "construed more broadly," this Court lacks jurisdiction and plaintiffs fail to state a claim "for the reasons stated in defendant's motion to dismiss plaintiffs' original complaint." Id. at 3 n.1 (incorporating by reference Defendant's Motion to Dismiss (Dkt. #6) and Defendant's Reply to Plaintiffs' Opposition (Dkt. #12)). The claim seeking a declaration that the individuals are United States nationals is based on the statutory remedy for being denied a right or privilege as a United States national pursuant to INA § 360, 8 U.S.C. § 1503. Therefore, because plaintiffs fail to state a claim under 8 U.S.C. § 1503, plaintiffs' entire action should be dismissed with prejudice.

do not meet the terms of 8 U.S.C. § 1408, which defines non-citizen nationals, plaintiffs argue that courts have "adjudicated the plaintiffs' nationality claims based on birth without applying the INA § 308, 8 U.S.C. § 1408." See Pl. Opp. at 21-22.  Plaintiffs' reliance on cases regarding the Philippines, see, e.g., Rabang v. Boyd, 353 U.S. 427 (1957), which was subject to the jurisdiction of the United States from 1898 until 1946, and a case about a Canadian-born person who made a manifestation that she was a United States national because she had lived in the United States since the age of ten, Oliver v. DOJ and INS, 517 F.2d 426 (2nd Cir. 1975), see Pl. Opp. at 21, is misplaced.  These cases are inapplicable to the present situation because none of them relates to territories that were allegedly subject to the jurisdiction of the United States after 1952, when INA § 308, 8 U.S.C. § 1408 became law. See Pub. L. No. 82-414, § 308 (1952). Furthermore, plaintiffs ignore the instruction in Marquez-Almanzar v. INS, 418 F.3d 210, 219 (2nd Cir. 2005), cited by Abur v. Republic of Sudan, 437 F.Supp.2d 166, 176 (D.D.C. 2006), that the 8 U.S.C. § 1101(a)(22)(B) definition of nationality must be "read in the context of the general statutory scheme" and "the only 'non-citizen nationals' currently recognized by our law are persons deemed to be so under 8 U.S.C. § 1408."

    Plaintiffs also argue that "territories subject to *de jure* sovereignty of the United States" extend beyond those defined by the statutory definition in 8 U.S.C. § 1101(a)(29) of "outlying possessions," which only includes American Samoa and Swains Islands.  See Pl. Opp. at 22. Plaintiffs' reliance on a Department of State Foreign Affairs Manual, which emphasizes that "there is no current law relating to the nationality of the inhabitants of [Midway, Wake, Johnston, and other islands] or persons born there who have not acquired U.S. nationality by other means," see Pl. Opp. at 22 (citing 7 FAM 1121.4-3) (emphasis added), is also misplaced.

No indigenous population and only United States government personnel live in the territories referenced by that Foreign Affairs Manual.  See The Word Factbook, Central Intelligence Agency, at https://www.cia.gov/cia/publications/factbook/index.html.  Therefore, plaintiffs' claims to being "noncitizen nationals" of the United States, see Pl. Am. Compl. at ¶¶ 7, 69, do not bring them within the terms of the INA.  Cf., Miller v. Albright, 523 U.S. 420, 467 n.2 (1998) (Ginsburg, J., dissenting) ("[n]ationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen.  8 U.S.C. § 1101(a)(22).  The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island.") (emphasis added); Abur, 437 F. Supp. 2d at 176-77.

**CONCLUSION**

For the reasons stated above and its memorandum in support of its motion to dismiss, defendant respectfully requests this Court to grant its motion to dismiss this action.

Dated: April 30, 2007

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney for the District of Columbia

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

Of Counsel
James G. Hergen (D.C. Bar #116382)
Assistant Legal Adviser for
East and South Asian Affairs
Office of the Legal Adviser
U.S. Department of State
Washington, D.C. 20520

_/s/_____
ADAM D. KIRSCHNER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044
Delivery Address
20 Massachusetts Ave., NW., Room 7126
Washington, DC 20001
Telephone: (202) 353-9265
Fax: (202) 616-8470
Adam.Kirschner@usdoj.gov

COUNSEL FOR DEFENDANT